R. A. HATFIELD v. STATE.

No. A-7641. Opinion Filed Nov. 8, 1930.
(292 Pac. 1058.)

42

Pryor & Stokes, Hugh Sandlin, and Hamilton & Hamilton, for plaintiff in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was convicted in the district court of Hughes county, of the crime of grand larceny, and sentenced to serve a term of two years in the penitentiary at McAlester.   From which judgment and sentence the defendant, after perfecting the record, appealed to this court.

The substance of the state's evidence is as follows: Julia Scott stated she knew the defendant, Russ Hatfield; she lost a calf on or about February 26, 1929; she did not know whether the hide found in the field of the defendant was the hide from her calf, as she did not see the hide.

Mose Scott testified his stepmother, Julia Scott, lost a calf in February—"I found a hide in the edge of the defendant's field on Wednesday morning; the calf had been missing since Monday night; the dogs had been dragging the hide around; Dobie Grant went with me to where the hide was." Willmott Scott testified he was with Mose when he found the hide, and he saw where the calf had been butchered. On cross-examination witness stated the dogs had been dragging the hide around, and that the hide belonged to the calf Julia Scott missed.

Other witnesses testified to seeing the hide, and to the furrows having been plowed, looked like to cover up the hide, and that the dogs had been dragging the hide around. Manuel Lavalley, who was an officer, testified he searched the defendant's house, but did not find any fresh meat in the house; that the hide was found a quarter of a mile from the defendant's home; the defendant did not make any statement to him.

Buddie Grant testified he knew the defendant and Julia Scott; he saw the hide after it had been found and the defendant asked him not to say anything about them cooking meat down there. Dobie Grant testified he was jointly charged with the defendant Hatfield with the larceny of the calf; at the time this calf was taken he lived on the Hatfield farm; that he and Hatfield stole the calf together, and he sold a dollar's worth of the meat; the defendant Hatfield shot the calf with a target rifle, and cut its throat; he was some distance on the hill, and it was dark. The witness admitted he had been convicted of larceny and had served a term in the penitentiary.

The defendant denies he had anything to do with the taking of the calf, or killing it, or that he had any knowledge that it had been stolen; or that he plowed the fur-

rows in the field for the purpose of covering up the hide it was claimed by the state's witnesses was found. The defendant stated he was in Holdenville the day the calf is alleged to have been stolen, and that he had nothing to do with the taking of the calf and did not get Dobie Grant to sell any of the meat; none of the meat was cooked at his house; he had been advised that Jim Larney paid Dobie Grant to testify this defendant was implicated.

Hayes Wright testified he did not give Dobie Grant permission to use his car on the 26th day of February, 1929, and when the car was taken by Dobie Grant the same was reported to the officers. This is, in substance, the testimony.

The defendant has assigned six errors alleged to have been committed by the court in the trial of the case. The first error argued by the defendant is as follows: "That the evidence on the part of the state wholly and totally fails to prove venue, and for said reason is insufficient to support a conviction."

If the record bore out the contention of the defendant, this alone would be sufficient to reverse this case, but unfortunately for the defendant the record does not support this contention. In the examination of the witness Julia Scott, the alleged owner of the calf, she was asked if she knew the defendant, Russ Hatfield, and Dobie Grant, and was asked the following questions:

"Q. How far do you live from them? A. I don't know just how far, but I live close to Hatfield.

Q. That was in Hughes county, Oklahoma? A. Yes, sir."

This court has often held that venue may be established by circumstances. The testimony of the witness

who claims to have owned the calf that was stolen was that she lived near Mr. Hatfield, and the hide they claim to have found was in the defendant's field, and that was in Hughes county, Okla. This contention of the defendant, we hold, is without merit.

It is next urged by the defendant that the conviction than that of a self-confessed codefendant, which is entirely uncorroborated.

Section 2701, C. O. S. 1921, is as follows:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

Beginning with the case of Kirk v. State, 10 Okla. Cr. 281, 135 Pac. 1156, up to the present time, it has been the universal holding of this court that a conviction cannot be had upon the testimony of an accomplice unless there is other testimony tending to connect the defendant with the commission of the offense, and that the corroborating testimony must go further than to merely show the commission of the offense or circumstances thereof. In this case it is shown that Dobie Grant was jointly charged with the defendant, but that the defendant was put on trial first. The question then arises, does the testimony of the state show that Dobie Grant was an accomplice of the defendant, and, if so, is the testimony sufficient to show a corroboration of the codefendant Grant's testimony, or does it merely show that an offense has been committed. The testimony shows that an animal of some kind was butchered in the field of the defendant and a fresh hide found in a place that had been plowed by the

defendant, the state's witnesses identifying the hide as being the same color of the calf that had been taken from Julia Scott, who says it was without her knowledge or consent. One other witness testified to seeing some fresh meat at the defendant's house about the time the calf was missed. The officer who searched the defendant's house after the calf was missing testified he did not find any fresh meat there. The defendant in this case may not be guilty of the crime charged against him, and may be a victim of unfortunate circumstances, yet the testimony of the state and circumstances surrounding it tends to show that the defendant was connected with the larceny of this calf. It was butchered in his field and the facts and circumstances corroborate the testimony of Dobie Grant that the defendant butchered the calf.

The jury heard the testimony of the witnesses and had an opportunity to judge of their demeanor while on the stand, and after considering the testimony found the defendant guilty. This court has repeatedly held that, where there is any competent testimony to go to the jury upon which it could reasonably find the defendant guilty, though the testimony is conflicting, it will not disturb the verdict. The circumstances surrounding the taking of this calf and the evidence as disclosed by the record are sufficient to sustain the verdict.

It is next urged by the defendant that he was deprived of a fair and impartial trial, for the reason he requested that the witnesses be placed under rule, and the court denied that request. The exclusion of the witnesses under the rule from the courtroom in the course of the trial is not an absolute right, but rests in the sound discretion of the trial judge. Denying the rule to the defendant is not reversible error unless the record discloses an abuse of the court's discretion. Harrell v. State, 36 Okla. Cr.

225, 253 Pac. 516; Barnett v. State, 41 Okla. Cr. 153, 271 Pac. 956.

After a careful study of the record in this case, we hold that the evidence is sufficient to sustain the judgment; that the defendant was accorded a fair and impartial trial; the court correctly advised the jury as to the law applicable to the facts in this case. No error appearing in the record of sufficient merit to warrant a reversal, the judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.