## HAROLD W. MILLER v. STATE.

No. A-9931.   March 11, 1942.
(123 P. 2d 699.)

Tellegen & Miskovsky, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J.   The defendant, Harold W. Miller, was jointly charged with Julius Stone, Clarence C. Kemp, Paul Clay, Floyd L. Greenfield, James Brundage, Henry W. Kemp, and Marvin Castell, by information filed in the court of common pleas of Oklahoma county on October 26, 1939, with the offense of maintaining a public nuisance.   Defendant was tried jointly with Marvin Castell, convicted and sentenced to serve a term of 60 days in the county jail and to pay a fine of $100, and appeals to this court.

Counsel for defendant contend that the trial court committed prejudicial error by admitting incompetent evidence, by admitting evidence illegally obtained, and that the evidence is insufficient to sustain the conviction.

The information states that defendant and his seven codefendants willfully, unlawfully and wrongfully committed the crime of maintaining and operating a public nuisance in the manner and form as follows:

"That is to say the said defendants, acting conjointly and together in the County and State aforesaid, and on the day and year aforesaid, then and there being, did then and there willfully, unlawfully and wrongfully maintain and operate a one story brick building at 925 Northwest Sixth Street in Oklahoma City, said County and State, and three automobiles, to-wit: one 1939 Ford coach bearing Oklahoma 1939 license S-439, one 1937 Ford Coach bearing Oklahoma 1939 tag Number 19E9 and one 1938 Chevrolet coach bearing Oklahoma 1939 tag N379, the said automobiles being operated at 925 Northwest Sixth street and adjacent thereto and said automobiles being operated at various and sundry other places in the streets of Oklahoma City, Oklahoma, all of the exact locations of which are to your informant unknown, where gambling games, betting on football games were permitted and where certain devices and apparatus for the purpose of giving information, recording and registering such bets and wages were kept and operated, such paraphernalia being football parlay cards, tickets and registers for registering bets and wagers and various other devices a more complete description of which is unknown and where divers persons unknown were permitted to congregate, all for the purpose of gambling, betting and wagering by means of books, machines and other devices or mutuals upon the results of football games and other games all to the common nuisance of the public, contrary to the form of the statutes in such case made and provided against the peace and dignity of the State of Oklahoma."

The proof on behalf of the state was largely furnished by the testimony of two police officers who had made an investigation of a system of gambling or lottery being conducted in Oklahoma City, which was commonly known as football parlays. Over the objection and exception of the defendant, these policemen detailed how this system of betting on football games was conducted. Certain parlay cards, with the description of games to be played, were distributed on Monday or Tuesday, prior to the

games to be played on week ends. These cards were distributed to various restaurants, beer parlors, cigar stands, and other places in Oklahoma City. As to some of the defendants named in the information, the officers testified positively to seeing them distribute some of these cards. Neither of them ever saw the defendant Miller distribute any of the cards. The manager of National Printing Company testified that he had printed the parlay cards identified by the police officers at the request of Clarence Kemp and Julius Stone, but that he had never done any business nor delivered any cards to the defendant Miller.

Over the objection of the defendant, the policeman testified as to the arrest of the defendant Miller and the search of his person, which resulted in the finding of two telegrams and a letter from the Gorham Press, a national football syndicate, which syndicate apparently, from the wording of the telegrams and letter, was furnishing to the defendant Miller data to be placed on parlay cards. Also seized from the defendant's person at that time were certain parlay cards identical with those seized by the officers at various places of business over the city. The question as to the admissibility of this evidence will be hereinafter discussed.

The proof of the state further shows that the policemen searched a building at 925 Northwest Sixth street, where they found a box of parlay cards. They further testified that just previous to the search and seizure of this box of cards, they had seen Marvin Castell carry this box into the building. The court, over the objection of the defendant, admitted testimony that the lady in charge of the building where the cards were found stated that the cards belonged to the defendant Miller.

The evidence is conclusive that the building at 925 Northwest Sixth street was being rented and occupied by the O & M Distributing Company. The defendant had no connection with this company, which was in the business of selling and distributing automatic phonographs.

The above and foregoing constitutes substantially all of the evidence introduced by the state which connected the defendant Miller with the commission of this offense. Assuming that all of said evidence is admissible, we do not believe that the same is sufficient to support the allegations of the information.

The statute under which this information was filed is 21 O. S. 1941 § 1191, which reads:

"Every person who maintains or commits any public nuisance, the punishment for which is not otherwise prescribed, or who wilfully omits to perform any legal duty relating to the removal of a public nuisance, is guilty of a misdemeanor."

In the case of James v. State, 4 Okla. Cr. 587, 112 P. 944, 34 L.R.A., N.S., 515, 140 Am. St. Rep. 693, it is stated:

"A house or place kept for the purpose of enabling persons to place bets or wagers upon horse races is a common gambling house, is a nuisance per se and those who conduct it are indictable and punishable under section 2465, Snyder's Comp. Laws Okla. 1909, 21 O. S. 1941, § 1191."

The information designates a particular place where the public nuisance was maintained and the offense committed. Certain automobiles are named in addition to the building described in the information. The testimony in this connection by the policeman McDonald on this matter is as follows:

"Q. Did you watch anyone gamble on these cards at 925 North West 6th? A. No, sir. Q. On the date charged?

A. No. Q. Did you ever watch anyone gamble on these cards in these automobiles charged in the information? A. No, sir. Q. Did you see anyone gathered around these parties for the purpose of gambling on these cards? A. No, sir. Q. Or these places or autos? A. No."

The other policeman's testimony was substantially the same.

In the case of Blanton v. State, 38 Okla. Cr. 149, 259 P. 655, it is stated:

"A public nuisance is one which affects at the same time an entire community or neighborhood or any considerable number of persons, and any person who maintains or commits any public nuisance is guilty of a misdemeanor.

"An information charging the keeping or maintaining of a public nuisance need not designate the particular place of the commission of the offense other than that it was committed within the county where the prosecution is had, but where a particular place is alleged, evidence of the commission of a nuisance at a different place is proof of an independent crime and is not admissible."

There was no evidence that the gambling cards were being distributed from the building named in the information. The automobile described in the information which belonged to the defendant, so far as the record discloses, was never used to distribute these cards. The other automobiles named in the information belonged to other defendants and no attempt was made to connect the defendant with the operation or control of those cars. Since the state has elected to designate particular places where it is alleged a public nuisance was maintained by the defendant, it must either sustain the allegations as to the particular places identified in the information, or a conviction cannot be upheld.

The operation of these football parlays, if carried on in a manner described by the policemen, might con-

stitute a public nuisance. The court, over the objection of the defendant, allowed the policemen to describe in detail how these parlays were conducted. These statements were just general in their nature without any attempt on their part to connect the defendant with the operation, but were explanatory of the meaning of the cards and the parlay system of betting in general. The fact that certain of these parlay cards might have been found in defendant's possession, without further evidence showing that he was using them unlawfully in the operation of this gambling game, would not be sufficient to support a charge of maintaining a public nuisance.

It is further contended that the evidence obtained by the officers at the time they arrested the defendant and searched his person was illegally obtained and inadmissible in evidence. The officer's testimony in regard to the circumstances surrounding the arrest and search of the defendant is as follows:

"Q. Now, where was Mr. Miller the first time you saw him? A. The first time we observed Mr. Miller was when he was in Crawford's Drug Store. That is the first time I observed him. When he went in there. Q. When is the next time you observed him? A. When we went in and he was in there, is the next time. Q. What was he doing? A. Using the telephone. Q. Was he disturbing the peace in any way? A. No, I wouldn't say he was. Q. Was he violating any law in the drug store in your presence? A. Not in my presence, no, sir. Q. Did you have a warrant for his arrest? A. No, sir. Q. Did you have any search warrant for his person? A. No, sir. Q. Then you just arrested him in police court fashion? A. We asked him to go down to headquarters."

One of the officers testified that he had been told that the defendant Miller was connected with the distribution of these cards. This hearsay statement, however, did not justify the arrest of the defendant by the officers,

as said statement, if true, would only constitute a misdemeanor. In the case of Gragg v. State, 66 Okla. Cr. 163, 90 P. 2d 454, 455, it is held:

"Where the offense is not a felony, the officer cannot arrest without a warrant unless the offense was committed or attempted in his presence.

"Where the officer does not know of the act constituting the offense, it is not committed in his presence."

This court has many times held in intoxicating liquor cases that no search of the person or seizure of any article found thereon can be made on mere suspicion that the person is violating the prohibitory liquor law. Keith v. State, 30 Okla. Cr. 168, 235 P. 631. The same rule would apply to any other misdemeanor.

As we have hereinabove stated, it is doubtful if the evidence was sufficient, if it is assumed that all of the evidence was competent and admissible against the defendant; but if the evidence which was seized in an unlawful manner is stricken from consideration, there remains no substantial evidence which, in any way, incriminates the defendant.

For the reasons hereinabove given, the judgment of the court of common pleas of Oklahoma county is reversed and the defendant discharged.

BAREFOOT, P. J., and DOYLE, J., concur.