## W. E. MAYES v. STATE.

No. A-10345.   March 7, 1945.

(156 P. 2d 822.)

Harve N. Langley, of Pryor, and Chas. G. Watts, of Wagoner, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for defendant in error.

PER CURIAM. The defendant, W. E. Mayes, was charged in the county court of Wagoner county, with the crime of driving a motor vehicle upon the public highway while under the influence of intoxicating liquor, was tried, convicted, and sentenced to pay a fine of $100, and has appealed.

It is argued that the trial court erred in admitting in evidence over objection of the defendant testimony of the officers who arrested the defendant that they found some whisky in the automobile allegedly driven by the defendant.

On the day in question, the defendant, a Cherokee Indian who lived in an adjoining county, had driven a Chevrolet coupe automobile to a place about three miles east of Wagoner. He was looking for the house of one Dave West, a friend of defendant who lived in that community. Accompanying the defendant was one Putnam

who admittedly was in an intoxicated condition. According to the testimony of defendant, he was driving Putnam around giving him some air so that he could sober up, and had started for the home of Dave West. Defendant drove up into the yard of the farm home of one Burkes. He got out of his automobile and went to the house to inquire about the location of the Dave West residence. At the house there were only two boys, aged 14 and 4 respectively. The defendant toussled the hear of the 4 year old boy and attempted to joke and play with both boys. The boys were scared and started to cry and defendant left the premises. As he started to leave the Burkes home, he saw some men bailing hay in an adjoining hay meadow. He drove over into the hay meadow and while over there his automobile became stuck on account of the soft ground in the meadow.

Willburn Burkes, the 14 year old boy at the place where the defendant had stopped, and another neighbor boy went into the town of Wagoner, and reported to the officers that the defendant was out in the hay meadow. It is apparent from the testimony of Willburn Burkes at the trial that he greatly exaggerated the defendant's condition when he reported to the officers. This was no doubt due to the fact that the defendant was a stranger to him and because of his Indian blood and mannerisms had scared the youth. After the youths had reported to the officers, the officers drove out to the hay meadow, and, accordingly to their testimony, "to arrest him."

Officer Willis, after testifying concerning the incidents leading up to his going to the hay meadow, testified about going up to the defendant's car. His testimony as to what happened then is as follows:

"Q. What happened then? What did you do? A. I said, 'What you doing, fellow?' I don't recall the re-

mark he made—something about what's it to you. I said, 'I'm taking you to town.' * * * Q. Why did you go down there? For what purpose did you go down there? A. I went down there to get the man. Q. Did you have a warrant for him? A. No, sir. Q. As far as you knew, he had committed no crime, misdemeanor or otherwise. A. As far as I knew, yes, he had. These boys' statement to me that he was drunk and disturbing someone was enough. Q. What was Mayes' condition with reference to being under the influence of intoxicating liquor? A. Well, he was under the influence of liquor, yes, sir. I couldn't say he was drunk. Anybody knowing anything would have cause to think the man was under the influence. (Officer) White told him if he made trouble he would knock his head off. Q. Did you find anything in the car? A. Yes, sir. Q. In what part of the car did you find it? A. When I opened the door, there was a pint about 2/3 full of whisky. Q. Did you open the door? A. That is right, and a pint about 2/3 full fell out. Q. Did you have a search warrant for it? A. No, sir. I opened the door to get him out."

The officer further testified that there was another pint about half full laying in the glove compartment, which was open, and that they raised up the turtle-back of the car and found two more pints in the back-end of the car. All of the testimony with reference to the search and seizure of the whisky was admitted over the objection and exception of counsel for defendant.

Title 37 O. S. 1941 § 8, provides:

"Any person who shall, in any public place, or in or upon any passenger coach, street car, or in or upon any other vehicle commonly used for the transportation of passengers, or in or about any depot, platform, waiting station, or room, drink any intoxicating liquor of any kind, or if any person shall be drunk or intoxicated in any public or private road, or in any passenger coach, street car, or any public place or building, or at any public gathering or if any person shall be drunk or intoxicated and shall disturb the peace of any person, he shall be guilty of a

misdemeanor, and upon conviction thereof shall be punished by a fine of not less than ten dollars, nor more than one hundred dollars, or by imprisonment for not less than five days nor more than thirty days, or by both such fine and imprisonment."

Under this statute, the defendant was not committing a misdemeanor in the presence of the officers when they arrived at the hay meadow. Assuming for the purpose of disposing of this question that defendant was intoxicated, yet the hay meadow was not a public place under the terms of the above statute, and it was not a violation of the law for a person to be drunk in such hay meadow.

The defendant testified that after he became stuck in the hay meadow that he was there about an hour before the officers came and during this time, he "took a drink or two; any old Indian would." There was no proof that defendant was intoxicated at the time he drove the automoblie up the country lane to the Burkes home, except the evidence of the Burkes boy in which he testified as follows:

"Q. What was his condition with reference to being under the influence of intoxicating liquor? A. I don't know anything about constipating liquor. Q. Was he drunk or sober? A. He was drunk. (Cross-examination) "Q. Do you drink anything? A. No, sir. Q. You don't know anything about intoxicating liquor? A. No, sir. Q. You have sued the defendant—you and your father? A. Yes, sir. Q. In the district court at Pryor? A. Yes, sir. Q. For $2,500? A. Yes, sir. I think that is what it was."

In the case of Miller v. State, 74 Okla. Cr. 104, 123 P. 2d 699, this court held:

"Where the offense is not a felony, the officer cannot arrest without a warrant unless the offense was committed or attempted in his presence."

"Where the officer does not know of the act constituting the offense, it is not committed in his presence."

"Where officers arrest the defendant upon mere suspicion that he is distributing parlay cards to be used for betting upon football games, and at the time of the arrest the defendant is searched, the evidence thus obtained is in violation of the constitutional right of the defendant to be secure in his person against an unlawful search and seizure, and is inadmissible against the defendant."

In the case of Gragg v. State, 66 Okla. Cr. 163, 90 P. 2d 454, 455, it is stated:

"Where the offense is not a felony, the officer cannot arrest without a warrant unless the offense was committed or attempted in his presence."

"In a prosecution for unlawfully transporting intoxicating liquors, defendant cannot be convicted upon evidence obtained by an unlawful search of his person without a warrant for his arrest, and neither the liquor so seized nor the evidence of possession thereof so acquired is admissible against him."

In the case of McKee v. State, 59 Okla. Cr. 353, 60 P. 2d 216, 218, it is said:

"A search of the person, without a warrant and where no legal arrest has been made, and on mere suspicion, is a violation of section 30, art. 2, State Constitution, forbidding unreasonable searches."

"Where a person is unlawfully arrested and his person, possessions, and immediate surroundings searched, the fact of finding liquor by such search does not constitute a justification therefor."

See, also, the following cases to the same effect. Patty v. State, 74 Okla. Cr. 322, 125 P. 2d 784; Whitford v. State, 35 Okla. Cr. 22, 247 P. 424; Hoppes v. State, 70 Okla. Cr. 179, 105 P. 2d 433.

In this case, the officers went to the hay meadow to arrest the defendant. They were acting on purely hearsay information which they had received from the two boys. The defendant had committed no misdemeanor in their presence. Under such circumstances, the arrest of defendant and search of his car was unauthorized and the whisky seized at such time was inadmissible in evidence against defendant. Due to the weakness of the state's case, as to whether the defendant was intoxicated when he drove the automobile up the road to the hay meadow, the admission of the evidence concerning the finding of the whisky was probably the determining factor in causing the jury to return a verdict of guilty. Because the erroneous admission of this evidence did materially prejudice the defendant, it is our opinion that the judgment and sentence of the county court of Wagoner county should be reversed.

It is so ordered.