**Application of Culngton Sam HENDRIX for the Restoration of his Driver's License.**

**No. 46760.**

Court of Appeals of Oklahoma,
Division No. 2.

Aug. 20, 1975.

Released for Publication by Order of Court
of Appeals Sept. 11, 1975.

Lewis E. Darrell, Oklahoma City, for appellant.

Stephen G. Fabian, Jr., Associate Counsel, Dept. of Public Safety, Oklahoma City, for appellee.

BRIGHTMIRE, Judge.

Appellant's refusal of a chemical test to determine the alcoholic content of his blood after being arrested without a warrant in his sister's front yard "for public drunk" resulted in a revocation of his driv-

er's license by both the Department of Public Safety and the District Court of Oklahoma County. He prosecutes this appeal contending that the request for a blood test was ineffective because his arrest was unlawful.

On March 6, 1973, shortly after four o'clock in the afternoon on an Oklahoma City street, one Mr. Hedge reported to the police the description of a man and a car which had run into him a short time before and then left the scene. Appellant, a 75-year-old man, was the one later accused of this. When the police officer arrived at the scene, only the driver of the car which was struck was still there. He told Officer Andrews he advised appellant not to leave the scene, but that appellant mumbled a street location before driving away and appeared to have been intoxicated. The officer was given the street location, a description of appellant, his car, and its license tag number.

Upon arriving in the area mentioned about 30 minutes later, the officer saw, parked in a residential driveway, a car that fit the description of the hit-and-run vehicle. In front of the car, according to the officer, was a man lying on the driveway. The officer said that as he approached, the man stood up. He fit the description of the hit-and-run driver and emitted "a strong odor of alcohol." Moreover, according to the policeman, the suspect's "eyes were bloodshot, watery. .\nd he attempted to speak and when he did so, it was slurred and mumbled to the point where I couldn't understand it. . . . He tried to walk and used the car for support. . . . I placed [appellant] under arrest for public drunk."

Shortly after the arrest, a witness to the accident arrived at the residence and identified appellant as the hit-and-run driver. The officer then said he was also arresting appellant for driving an automobile while under the influence of alcohol and leaving the scene of an accident. Later at police headquarters, when asked, the accused

refused to submit to a chemical test, either breath or blood, to determine the alcoholic content of his blood.

Appellant's driving privilege was thereupon revoked by the Oklahoma Commissioner of Public Safety for a period of six months under the provisions of 47 O.S. 1971 § 753. A hearing before the commissioner upon the revocation order requested by appellant resulted in the order being upheld.

After a de novo hearing in district court, as provided by 47 O.S.1971 § 755, the trial court found that appellant "was arrested upon reasonable grounds to believe that he was driving under the influence of alcohol and that he subsequently refused to submit to a chemical test and therefore the six month revocation ordered by the Department of Public Safety should be affirmed."

In his appeal, appellant argues under three separate propositions, in effect, that his refusal to submit to a chemical test was inoperative because "his arrest was unlawful and therefore the request that he take a chemical test was unlawful."

■ The Implied Consent Law giving a police officer the right to request a driver of a motor vehicle to submit to a chemical test of his blood is incorporated in 47 O.S. 1971 § 751 which reads as follows:

"Any person who operates a motor vehicle upon the public highways or streets of this state shall be deemed to have given consent subject to the provisions of this act to a chemical test or tests of his blood or breath, at the election of the person proposed to be tested, for the purpose of determining the alcoholic content of his blood. The test or tests shall be administered at the direction of a law enforcement officer *after having arrested a person and having reasonable grounds to believe the person driving* or in actual physical control of a motor vehicle upon the public highways *was under the influence of alcohol or intoxicating liquor.*" (emphasis ours)

This language, it can be seen, requires that prior to a request to submit to the chemical test there must be (1) an arrest of one operating or in control of a motor vehicle on a "public" highway or street, and (2) the arresting officer must have reasonable grounds to believe such person is under the influence of alcohol.[1] This brings us to two threshold questions: (1) is a valid arrest essential to invoke the provisions of § 751 and (2) if so, was the arrest involved here lawful?

The first question seems to have been answered in Application of Baggett, Okl., 531 P.2d 1011 (1974) by citing cases stressing the importance of a lawful arrest as a condition precedent to a chemical test. In fact this language, found in a North Dakota case, was among that quoted with approval in *Baggett*: "All that the law now requires as condition precedent to a chemical test is that there be a valid arrest."

This being so we turn to the matter of whether appellant was lawfully arrested.

---

1. This is the first section of a series of three. The second one (§ 752) relates principally to the manner of administering the test. The third one (§ 753) deals with the consequences of refusing a test and reads:

"If a conscious person under arrest refuses to submit to chemical testing, none shall be given, but the Oklahoma Commissioner of Public Safety, upon the receipt of a sworn report of the law enforcement officer that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of alcohol or intoxicating liquor, and that the person had refused to submit to the test or tests, shall revoke his license to drive and any nonresident operating privilege for a period of six months; or if the person is a resident without a license or permit to operate a motor vehicle in this state, the Oklahoma Commissioner of Public Safety shall deny to the person the issuance of a license or permit for a period of six months after the date of the alleged violation, subject to review as hereinafter provided."

Admittedly the police officer had no warrant for the arrest of appellant. It is not contended a felony had been committed nor was appellant even suspected of having committed one. Under these circumstances the officer could legally arrest appellant only for "a public offense, committed or attempted in his presence." 22 O.S.1971 § 196; Coffey v. State, 38 Okl.Cr. 91, 258 P. 923 (1927).[2]

As though he was aware of relevant law, the arresting officer testified that while driving east on 4th Street he saw a white over blue Pontiac—fitting the description of the one given him a short time before —sitting in a residential driveway. He further explained that "[l]ying on the driveway, directly in front of this vehicle, there appeared to be a man lying there. I stopped my vehicle and got out and went *to check the welfare* of the person that appeared either asleep or possibly hurt. As I approached him—the description closely fit that given me by Mr. Hedge in relation to the driver. I noticed the vehicle in the driveway had the same tag number as that given to me by Mr. Hedge. As I approached the man on the pavement, he began to stand up. There was a strong odor of alcohol . . . . His eyes were blood-shot, watery. And he attempted to speak and when he did so, it was slurred and mumbled to the point where I couldn't understand it. And I asked him what he'd been drinking. He tried to walk and used the car for support. I asked him what his name was and he gave me the name of Cuington Sam Hendrix *and I placed Mr. Hendrix under arrest for public drunk.* And at this point I was approached by a witness of the accident, Mr. Franklin, the Security Guard for Oklahoma University. He had been a witness and he told me . . . that this was definitely the man that he had seen driving the hit and run vehicle . . . [so] upon receiving this information, [Mr. Hendrix] was also placed under arrest for leaving the scene of an accident and driving under the influence." (emphasis ours)

Thus the arrest was made without a warrant on the asserted basis of three misdemeanors two of which—"leaving the scene of an accident and driving under the influence"—were obviously not committed in the presence of the arresting officer. Perhaps, because he felt the need for the commission of some offense in his presence, the officer arrested appellant on the public drunk charge in an effort to obviate the necessity of filing a charge and pursuing legal proceedings for a warrant. Under these circumstances the critical question insofar as the arrest itself is concerned becomes this—assuming appellant was "drunk," was he under the circumstances violating the so-called "public drunk" statute making it a misdemeanor to be "drunk or intoxicated in any public or private road" ?[3]

---

2. Since the incident in question occurred in 1973 it could not be affected by a 1975 amendment of 22 O.S.1971 § 196 adding this additional authority of an officer to arrest without a warrant:
"At the scene of an accident when he has reasonable cause to believe that the party was driving a motor vehicle involved in the accident upon the public highways, streets or turnpikes and was under the influence of alcohol or intoxicating liquor."

3. 37 O.S.1974 Supp. § 8 reads:
"Any person who shall, in any public place, or in or upon any passenger coach, street-car, or in or upon any other vehicle commonly used for the transportation of passengers, or in or about any depot, platform, waiting station, or room, drink or otherwise consume any intoxicating liquor, intoxicating substance, intoxicating compound of any kind, or inhale glue, or paint or other intoxicating substance, or if any person shall be drunk or intoxicated in any *public or private road,* or in any passenger coach, streetcar or any public place or building or at any public gathering from drinking or consuming such intoxicating liquor, intoxicating substance or intoxicating compound or from inhalation of glue, paint or other intoxicating substance, or if any person shall be drunk or intoxicated from any cause and shall disturb the peace of any person, he shall be guilty of a misdemeanor . . . ." (emphasis ours)

Appellee recognizes the difficulty of trying to establish the public drunk charge but nevertheless argues that the private driveway in question was a "private road" within the meaning of the public drunk statute.

In trying to discern what meaning the legislature intended by use of the phrase "private road," we must examine it within the context of the entire statute. In a broad sense of the term an ordinary residential driveway can be said to be a private road. However, it is ordinarily not thought of as such and from a reading of the statute in question we do not believe its enactors had residential driveways in mind. For if they did it was the only bit of residential property so affected which means that the legislature intended that a drunk homeowner could stand on his walk, yard or lawn without committing an offense, but the minute he set foot on his driveway he violated the law.

 A correct analysis of the public drunk statute in light of its objective—to protect the public—develops with clarity the conclusion that the lawmakers intended to ban a drunk person from all places where the public has a right to be and where the drunk is apt to come in contact with or annoy members of the public. In its opening sentence is found the main thrust of the statute, namely, to prevent drinking and being drunk "in any public place." Each of the places specifically named is one to which the public is invited, whether private or public property. We think the same thing was intended by use of the words "public or private road" . . . that is, roads which the public has a right or has been invited to use. Examples of the latter include private roads through shopping centers, private universities and motels. This was the effect of the result reached in *Mayes v. State,* 80 Okl.Cr. 52, 156 P.2d 822 (1945)

in construing the subject statute as not authorizing the arrest of one for "public drunk" who had driven down a hay meadow road and got stuck. Said the court: "[T]he hay meadow was not a public place under the terms of the above statute, and it was not a violation of the law for a person to be drunk in such hay meadow."

 We hold that the phrase "private road" as used in the public drunk statute (37 O.S.1974 Supp. § 8) means a privately owned road open to the public; it does not include a private residential driveway. Under these circumstances appellant was not committing the crime of being publicly drunk in the presence of the arresting officer so that the warrantless arrest was unlawful.

In the absence of a valid arrest the police were left (a) without authority for requiring a test and (b) with a refusal that furnished no basis for a license revocation.

 Finally there is another reason why the revocation in question cannot stand. It should be recalled that once the commissioner revokes a license under § 753 and the licensee requests a hearing a new statute comes into play—47 O.S.1971 § 754. This statute—the one governing us here—specifies that the scope of the hearing shall include these "issues . . . [1] whether the person had been driving . . . a vehicle upon the public highways while under the influence of alcohol . . . [2] whether the person was placed under arrest and [3] whether he refused to submit to the test or tests." [4] In our opinion there is insufficient evidence in the record to establish the first issue—that appellant was in fact driving a motor vehicle under the influence of liquor at the time of the alleged accident in the legal sense that his nervous system, brain or muscles were so affected "as to impair, to an appreciable degree, his ability to operate his car." In

4. Section 754 was amended in 1975 so that the first issue is now "whether the officer

had reasonable grounds to believe the person" was driving under the influence.

the Matter of the Appeal of Tucker, Okl. App., 538 P.2d 626 (1975). The only evidence relevant to appellant's condition came through the testimony of Mr. Hedge who, after establishing that appellant was driving the car that hit him, said appellant "appeared to be maybe under the influence of alcohol." This, of course, falls short of providing proof that appellant's nervous system, brain or muscles were affected to such an extent as to impair, to an appreciable degree, his ability to operate his car. Nor was the testimony transformed by what the officer said he observed some 30 minutes later.

For these reasons we hold appellant's refusal to take the chemical test was justified on the ground that the attempted administration was unlawful and therefore furnished the Commissioner of Public Safety no basis for revoking appellant's license under 47 O.S.1971 §§ 751, 752 or 753, nor was there sufficient evidence submitted in support of the other required elements during the post-revocation hearing.

The order of revocation appealed from is therefore vacated.

NEPTUNE, P. J., and BACON, J., concur.