## PAT McLAUGHLIN v. STATE.

No. A-3598—Opinion Filed Dec. 30, 1920.

(193 Pac. 1010.)

(Syllabus.)

1. **Provisions of Statute Quoted.** Under the Code of Criminal Procedure, "if, at any time after the evidence on either side is closed, the court deem it insufficient to warrant a conviction, it may advise the jury to acquit the defendant. But the jury are not bound by the advice, nor can the court, for any cause, prevent the jury from giving a verdict." Section 5896, Rev. Laws 1910.

2. **TRIAL—Instructed Verdict of Acquittal.** In the trial of a criminal case, if the evidence introduced by the state fails to incriminate the defendant, or as a matter of law is insufficient to show that he is guilty of the offense charged, it is not only the right but the duty of the trial court to advise the jury to return a verdict of acquittal.

3. **EVIDENCE—Circumstantial Evidence—Sufficiency.** Where, in the trial of a criminal case, the evidence relied upon for a conviction is entirely circumstantial, the circumstances tending to show guilt must be consistent, the one with the other, and point so strongly to the guilt of the defendant as to exclude every other reasonable hypothesis except that of guilt.

4. **LARCENY—Grand Larceny—Insufficiency of Evidence.** Evidence on the trial for grand larceny examined, and held insufficient to support a conviction.

*Appeal from Superior Court, Creek County;*

*Gaylord R. Wilcox, Judge.*

Pat McLaughlin was convicted of grand larceny, and appeals. Reversed.

*F. W. Jacobs* and *Oscar Cooper*, for plaintiff in error.

The Attorney General and *W. C. Hall*, Asst. Atty. Gen., for the State.

DOYLE, P. J. This appeal is from a judgment rendered upon the verdict of a jury finding the defendant guilty of grand larceny. The record shows that on May 19, 1919, the county attorney of Creek county filed an information jointly charging the defendant and Joe Staley with the theft of a Ford car, the personal property of Jim Hinton, in said county on the 9th day of May, 1919. On the 6th day of June, the county attorney filed an amended information jointly charging the defendant and Joe Staley and Charley Sharp with the theft of said Ford car. On June 7, 1919, the case was called for trial and the defendants Sharp and Joe Staley withdrew their former pleas and entered pleas of guilty. The trial then proceeded as to this defendant. On the same day the jury returned a verdict of guilty and that they were unable to agree on the punishment. A motion for new trial was duly filed and overruled. On the 14th day of June, the court rendered judgment on the verdict and sentenced the defendant to be confined in the penitentiary for a term of four years.

Various errors are assigned as a basis for a reversal of this judgment, but no brief has been filed on behalf of the defendant and we have not been favored with an oral argument in his behalf. However, we have examined the record as carefully as the due and proper administration of justice demands.

The first and most important question presented by the record is the failure of the court to direct an acquittal because of the insufficiency of the evidence to support a conviction.

The evidence shows that on the date alleged Jim Hinton lived about five miles southwest of Mannford and was the owner of a new Ford car, which his son, Carl, drove to Mannford that night, about 9 o'clock, and left in front of a drug store. Carl Hinton testified:

"I saw Joe Staley and Charley Sharp in Mannford that night. They were standing about a hundred feet from the car at the time. About midnight I went to where I left the car and it was gone. I was with my father and brother and three or four others the next night when we found the car stuck in the mud near the town of Fisher. The defendant and Joe Staley were in the car when we found it."

Several witnesses testified that they were with the parties that found the car in the road near Fisher, and that the defendant and Joe Staley were in the car at the time.

Lee Wiggs testified:

"I live at Keystone. I saw the defendant there on the night of the 10th of June. He left Keystone that night about 11 o'clock in a car with Joe Staley and a boy named Wilcox. Before they started Wilcox came into my place and got three quarts of engine oil. One quart was put in the engine and two quarts were corked up and put in the car and they started down the road towards Fisher."

Art Ward testified:

"I am the agent for the Frisco at Keystone. I own a car. On Saturday June 10th, I contracted my car to Charley Sharp. I helped him to back the car out of the garage and then I went fishing. Some one drove the car while I was gone."

J. T. Adair testified:

"I live at Keystone. I know all three defendants. I drove Charley Sharp and Joe Staley on the night of the 9th of May. I did not see defendant on the night of the 10th. I had a conversation with Joe Staley about repairing a car to take him out to Fisher that night. He said he wanted to go to the chock joint that was on the road between Keystone and Fisher."

Tom Durham testified:

"I live at Keystone. On Friday night, May 9th, I was at a chock joint in Tulsa county east of Keystone. About 11 o'clock that night I saw a new Ford car drive up there and Joe Staley and Charley Sharp were in the car. I did not see the defendant that night."

Loyd Carter testified:

"I live at Keystone. I was at the chock joint on the Keystone, Tulsa road, on Friday night, May 9th, about 1:30 something like that. Charley Sharp and Joe Staley drove up in a new Ford car."

R. Hinton testified that in going east that night to where the car was found:

"I met a boy going back towards Keystone in a car. I did not know his name but the others said his name was Wilcox."

J. E. Ellidge testified that:

"I was in the car with Carl Hinton as they drove east from Keystone that night and we met this boy Wilcox driving car towards Keystone. It was the depot agent's car."

The state rested and the defendant moved the court to direct the jury to return a verdict of acquittal because the evidence is insufficient to sustain a conviction.

The defendant testified in his own behalf and stated:

"I live at Keystone. I was there on the 9th of May and on the 10th of May until about 10:30 or 11 o'clock, when I started to Tulsa with Joe Staley and Neeley Wilcox. I missed the evening train and I offered $10 to any one that would drive me to Tulsa. I met Joe Staley and Wilcox. Wilcox said he had a car there any time. Staley said he could get a car and they made arrangements to take me to Tulsa. Wilcox was to take me to Starks, down near Fisher, and Staley was to take me on to Tulsa in his car and they were to split the $10. The Wilcox boy was driving the car when we left Keystone. At Starks there was another car standing there and Staley said, 'There is my car;' and told Wilcox he could go back. I changed cars and started with Joe Staley on to Tulsa, and he got stuck in a mudhole near Fisher and we were surrounded by officers and arrested."

On cross-examination he testified:

"I was around the business part of Keystone the most of the time Friday night, May 9th. I was at Miss Jones' cafe until about 10:30. I ate dinner there and supper there about 11 o'clock. Earl Hogg and I walked home with the two Misses Jones. I then went home with him and then I came back to my room and slept there that night. I did not see Staley or Sharp that night. The place we changed cars was a chock joint. It was where Joe Staley had been working and he said the car was his. I had known Joe Staley and Charley Sharp two or three years. I gave Joe Staley and Wilcox two $5 bills to take me to Tulsa."

Miss Etheyl Jones testified:

"I have lived in Keystone 12 years; run a short order place. I have known the defendant 3 or 4 years. He often ate in my place at Keystone. He was at my cafe on Friday night, May 9th, about 9 o'clock and again about 10 o'clock. He ate two suppers there that night, one about 8 and one about 10. About an hour later or

something like that he walked home with us girls and stayed about 30 minutes at our house and then left."

Florence Jones testified:

"I run the cafe with my sister. I do not know the defendant personally, but I have heard of him the last two or three years. I remember that on Friday, the 9th of May, he ate breakfast at our place and I saw him off and on all day Friday and Friday night until about 11:30, and he was there on the 10th."

Neeley Wilcox testified that on Saturday evening, May 10th:

"I was talking to Joe Staley and the defendant came across from the depot at Keystone and wanted to get to Tulsa; said he would give $10 to any one to take him. Staley said he had a car at Starks and if he could get any one to take him there he would take him on to Tulsa, and I went and got the depot agent's car and drove them down to Starks and Joe Staley said, 'There is my car;' and he got out with the defendant and I went on back."

On cross-examination he testified:

"I am staying with Charley Sharp, the boy that pleaded guilty here this morning. Charley Sharp told me to get the depot agent's car that evening; that he had hired the car from the agent. The defendant was not with me when I got the car. He paid Joe Staley $10 and Staley gave me $5."

It is well-settled law in this state that if there is evidence to support the conviction this court will not weigh the sufficiency of the same to support the verdict. It is, however, equally well-settled law in this state that this court will consider all the evidence to ascertain whether a verdict is in fact founded upon sufficient evidence to warrant a conviction.

If the evidence introduced by the state fails to incriminate the defendant, or as a matter of law is insufficient to show that he is guilty of the offense charged, it is not only the right but the duty of the trial court to advise the jury to return a verdict of acquittal. Section 5896, Rev. Laws. The court may do this of its own motion and the defendant may present to the court his right to an acquittal as a matter of law, under this section, but the defendant is not confined to this formula, or to any form of words in presenting to the court his right to be acquitted; all that is necessary is that in some intelligible form there shall be presented to the court for its ruling and decision the question that there is not sufficient evidence to warrant a conviction. If this were not the rule, the jury would in all cases be the sole judge of the question, and there would be no remedy against convictions clearly based upon insufficient evidence.

It appears from the record that the sole ground upon which the case was submitted to the jury was that the defendant was found in the stolen car with one of the confessed thieves. It also appears that the charge of the court did not contain an instruction on circumstantial evidence. However, the defendant did not object to the instructions given by the court and did not request any instructions. It is undisputed that the defendant was not in the town of Mannford when his codefendant stole the car in question, or that he had hired Staley and Wilcox to drive him to Tulsa, and there is an entire absence of testimony tending to show that this defendant aided and abetted his codefendants in any way.

It is unquestionably the law that crime may be established by circumstantial evidence, otherwise society

would be at the mercy of the criminal classes, but it is also uniformly held that the circumstantial evidence must go beyond mere suspicion and conjecture, and where circumstantial evidence solely is relied on for a conviction the circumstances tending to show guilt must be consistent, the one with the other, and point so strongly to the guilt of the defendant as to exclude every other reasonable hypothesis except that of guilt. Can it reasonably be said that the fact that this defendant was riding in the stolen car with one who was confessedly the thief was sufficient to show his complicity in the crime charged. It seems to us clearly that it was not, and for this reason, when the state closed its case in chief, the instruction asked by the defendant directing the jury to return a verdict of acquittal should have been given at that time.

After a careful consideration of all the testimony offered by the state and the defendant, we are of opinion that, as a matter of law, the evidence was insufficient to warrant a conviction; and accordingly the judgment of the trial court is reversed.

ARMSTRONG and MATSON, JJ., concur.