## CHESTER ISOM v. STATE.

No. A-8539.   Oct. 20, 1933.
Rehearing Denied Nov. 24, 1933.
(26 Pac. [2d] 952.)

174

Baird & Jones, George F. Womack, and S. H. Singleton, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter referred to as the defendant, was convicted of larceny of an automobile and sentenced, to serve a term of eight years in the state penitentiary. From the judgment and sentence, defendant appeals.

Sybil Monahan, called on behalf of the state, stated:

"I was the owner of a two door Chevrolet Coach, 1932 model; I was spending the night with my mother in Duncan, Oklahoma; I parked my car in the yard near the living room window; next morning about eight I discovered the car was gone. I next saw the car the following Thursday at Wagonon Garage, in Duncan. It had a fancy radiator cap on it. The top of the car had a three inch hole cut clear through; the ignition had been un-

screwed and filed where it could be opened with a finger nail or match.. When I parked the car for the night the windows were all up and both the car and the ignition were locked; when I recovered the car the slit place was on the left side above the handle of the door; the motor number had been changed; I identified the car by a cigarette burn on the right side of the door handle. It had the same highway tag on it I got from the highway department."

W. T. Stapp, called on behalf of the state, testified in substance:

"I am a deputy sheriff of Cotton county, Okla.; on August 30, 1932, I was in Grandfield; I arrested Chester Isom and G. Boone Hinkle; at the time I arrested them they were in a 1932 Model two-door Chevrolet Coach; Boone Hinkle was doing the driving; Chester Isom was with him; Hinkle told me his name was Bob Graham, and Chester Isom told me his name was Chester Isom. I searched the car and the men; found a pistol in the right-hand pocket of the door; under the rug on the floor was some applications for titles. I took a purse, a pocket-knife and some small change from Isom; I did not take the serial number of the car; I found a cashier's check for $2,750 on one of the boys, but I don't remember which one; the men were sitting in the car when arrested; Hinkle did the talking."

R. R. Sharp, testifying on behalf of the state, stated:

"I am an undersheriff of Stephens county, Oklahoma; I was in Walters on the 31st day of August, 1932, when Mr. Sullivan was interrogating Chester Isom; Isom said he left his father's ranch to drive to Amber, and then to Oklahoma City; he met Boone Hinkle at the airport at Oklahoma City, and decided to go to Wichita Falls, Texas, with Hinkle; they came back to his father's ranch near Amber and left the car Isom was driving and went on in Hinkle's car."

C. M. Mullins, called on behalf of the state, stated:

"I am a deputy sheriff of Stephens county; I went to Walters with the county attorney and Mr. Sharp; I saw the car Isom and Hinkle were driving at the time they were arrested; it had one Texas tag on it; Mr. Johnson, Mr. Crisp and myself went out to the Isom ranch; we found a Chevrolet car in a shed at the ranch; it was later turned over to Miss Monahan; on the left side above the door, a hole was cut in the top three or four inches long. The ignition was out of the instrument board hanging underneath; the door was still locked. We stayed there from four o'clock in the afternoon until after midnight; Mr. Isom, two boys and his son Leland, and a Mr. Baird came to the place. Leland came out to where the car was in the shed and went back; myself and a deputy sheriff from Chickasha was behind the car at the time; I went out and Mr. Isom and Mr. Baird was standing at the car, getting ready to leave; we brought the car back and turned it over to Miss Monahan."

Horace Crisp testified in substance the same as Mr. Mullins, and further stated that the tag found in the side room of the chicken house was a 1932 Texas tag No. 523—806.

W. L. Denney, testifying on behalf of the state, stated:

"I live at El Reno; on August 27, 1932, I lived in Duncan; I had a new Chevrolet car that was stolen from me that night; later I recovered the car at Walters; I had a Texas tag on it; when recovered the car only had a rear tag; the number of the tag was 523—806. I had a sort of an eagle or bird on the radiator cap; when I got it back it had a plain cap on it; the top was cut and the ignition had been taken out of it; the motor number had been changed. I know nothing about the Monahan car."

Archie Royce testified he lived near the Isom ranch:

"I moved there the last night of August; I saw the car out at the shed; Chester batched there part of the time

and Leland part of the time; I did not see Chester about the place the 30th or 31st of August; I saw Chester at the ranch getting ready to go to the city; Chester stayed there part of the time, and was gone for several days at a time. I had not seen the Chevrolet in the shed prior to the time the officers found it."

The defendant's defense is an alibi. Testifying in his own behalf, the defendant denied any knowledge of the car being brought to the ranch house while he had been living there and denies any knowledge that the car that he started to drive in with Boone Hinkle to Texas was a stolen car; he states he was going down there to see a sweetheart; that he met Boone Hinkle out between the old and new airports; he was coming to Oklahoma City and Boone was leaving; that he was coming to the city to get chloroform to treat the cattle; had borrowed $2 from a Mr. Huckaby who ran a store at Amber to buy the chloroform with, as Mr. Huckaby was out of chloroform and defendant did not have any money. The defendant states he started to Texas with Hinkle, but no mention is made or anything said about his getting money from any place to defray the expense of the trip. Several of his family and friends testify that the defendant Isom was in Oklahoma City the nights it is alleged the cars were stolen.

The foregoing is all the testimony it is deemed necessary to set out in order to pass upon the questions raised by the defendant in the record. The evidence in this case is all circumstantial, but the jury found against the defendant and returned a verdict of guilty.

Twenty-four errors have been assigned by the defendant wherein it is alleged the court committed reversible error. The first assignment discussed by the defendant is that the court erred in overruling the demurrer of the

plaintiff in error to the evidence offered by the state, and that the court erred in overruling the motion of plaintiff in error to instruct the jury to return a verdict of not guilty, for the reason that the evidence was wholly insufficient to show the defendant guilty of the crime as charged, or any other crime against the laws of the state of Oklahoma.

It is urged by defendant in support of his first assignment of error that the evidence is insufficient to sustain a conviction and that there is no circumstantial evidence tending to connect the defendant in any way with the larceny of the automobile. In fact, this assignment of error seems to be the one upon which the defendant relies chiefly for a reversal of this case; that is, that the evidence is insufficient. In support of his contention the defendant cites McLaughlin v. State, 18 Okla. Cr. 137, 193 Pac. 1010. A careful examination of McLaughlin v. State, supra, clearly shows the facts in this case are different from the facts in the McLaughlin Case.

We are of the opinion the evidence is adequate and sufficient to sustain the conviction, and that no unbiased jury could have reached any other conclusion than that this defendant is guilty. The car was hidden in the shed at defendant's place, and one of the license tags of the Denney car was found there, which was the car the defendant and Boone Hinkle were driving at the time of their arrest. The testimony clearly connects this defendant with the taking of both the Monahan and Denney cars, and it appears from the record that this defendant and Boone Hinkle had entered into a conspiracy to steal these cars and run them somewhere for the purpose of selling or disposing of the same to their benefit, and to deprive the owners of their cars.

The testimony shows Boone Hinkle had been seen by people in the vicinity of Amber, and on the occasion of the taking of these cars Boone Hinkle was seen going toward the Isom ranch about dark of the evening of August 28, 1932, with a woman and little girl in the car with him; he was driving a Chevrolet car. The court did not err in overruling the demurrer of the defendant or his motion for an instructed verdict.

Counsel for the defendant has filed an able brief in support of the defendant's assignments, attempting to convince the court that reversible error was committed in the trial of his case. One of the assignments urged is that the trial court committed error in overruling his motion for a new trial, on the ground of newly discovered evidence. This court cannot reach the conclusion that the evidence of Boone Hinkle is newly discovered evidence. Hinkle admits the taking of the car, and Hinkle had been associated with the defendant for some time, each knowing what they had been charged with. The trial proceeded, and at no time during the trial of the defendant does it appear from the record that Hinkle asked to be permitted to take the stand and testify that the defendant in this case had nothing to do with the taking of the car. The affidavit of Boone Hinkle attempts to show that the defendant was not guilty of the charge against him. Should this case be reversed on the ground of newly discovered evidence urged by the defendant, and assigned for a new trial, neither the defendant nor the state could compel Hinkle to testify if he refused to do so. Hopkins v. State, 11 Okla. Cr. 385, 146 Pac. 917.

A motion for a new trial upon the ground of newly discovered evidence is addressed to the sound discretion of the trial court, and unless an abuse of such discretion

is shown the judgment will not be reversed on appeal on account of the overruling of the motion for a new trial. Carter v. State, 35 Okla. Cr. 421, 250 Pac. 807.

A new trial on the ground of newly discovered evidence will not be granted unless it appears that with the exercise of due diligence the evidence could not have been discovered before the trial. McColloch v. State, 45 Okla. Cr. 442, 283 Pac. 1026.

In this case there is no showing whatever that the evidence of Hinkle could not have been discovered prior to the trial of the defendant. Hinkle was jointly charged with the defendant, and the defendant had every opportunity to learn what Hinkle would testify to. The court did not err in overruling the motion for a new trial on the ground of newly discovered evidence.

The defendant next urged that the court erred in refusing to give defendant's requested instructions. It is not error for the trial court to refuse to give requested instructions, although they may be a correct statement of the law, if the principles contained in said requested instructions have been included in and given by the court in its general instructions. Hamilton v. State, 38 Okla. Cr. 62, 259 Pac. 168; Wheat v. State, 38 Okla. Cr. 119, 259 Pac. 279.

The substance of the instructions requested by defendant are covered by the general charge of the court, and the instructions as a whole fairly and fully state the law applicable to the facts. The court did not err in refusing to give the requested instructions.

There are other errors assigned by the defendant, but upon a careful study of the record, and the authorities cited in support of the errors, we hold that they are with-

out merit. The defendant was accorded a fair and impartial trial. The court properly instructed the jury as to the law applicable to the facts. The evidence is sufficient to sustain the judgment. No fundamental or prejudicial errors sufficient to warrant a reversal are found in the record.

The judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.