PHILLIPS v. STATE.

No. A–11852.

Criminal Court of Appeals of Oklahoma.

Feb. 17, 1954.

B. S. Null, Hartshorne, Willard Gotcher, M. O. Counts, McAlester, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., Homer Neece, County Atty., McAlester, for defendant in error.

BRETT, Justice.

The plaintiff in error Robert Phillips, defendant below, was charged by information in the district court of Pittsburg county, Oklahoma, with the crime of kidnapping (Title 21, § 745, O.S.1951) one Jackie Parris. The crime was allegedly committed on April 1, 1951 in said county and state. The defendant was tried by a jury, convicted, and the jury was unable to agree on the punishment which was left to the trial court to assess. The trial court sentenced the defendant to the State Penitentiary for 20 years and judgment and sentence was entered accordingly, from which this appeal has been perfected.

The defendant attacks the sufficiency of the information on three grounds, (1) that the information was defective in that the offense charged was not direct and certain, (2) on the ground that the information was duplicitous in that it attempted to set forth separate offenses without pleading them in separate counts, and (3) the information failed to charge a violation of law under the statutes of the state of Oklahoma. For the foregoing reasons the defendant contends the trial court erred in overruling his demurrer to said information. The information hereinafter set forth

will disclose the lack of merit in the defendant's first contention. The information was sufficiently direct and certain to inform the defendant of the charge confronting him, kidnapping, as defined in the Oklahoma statutes.

The defendant next contends the information is duplicitous in that it cannot be determined whether the charge is laid under the provisions of Title 21, § 741, subs. (1), or Title 21, § 745, O.S.1951, the pertinent parts thereof reading respectively as follows, to wit:

"Every person who, without lawful authority, forcibly seizes and confines another, or inveigles or kidnaps another, with intent, either:

"First. To cause such other person to be secretly confined or imprisoned in this State against his will; or,

"Second. * * *

"Third. * * *."

§ 745. "A. Every person who, without lawful authority, forcibly seizes and confines another, or inveigles or kidnaps another, for the purpose of extorting any money, property or thing of value or advantage from the person so seized, confined, inveigled or kidnaped, * * * shall be guilty of a felony, and upon conviction shall suffer death or imprisonment in the penitentiary, not less than ten years. * * *"

The essence of the charging part of the information reads as follows:

"* * * that Robert Phillips did * * * then and there unlawfully, * * * and feloniously and forcibly, seize and confine one Jackie Parris, * * * with the unlawful, * * * and felonious intent then and there on the part of him," that she "be carried and transported out of the County of Pittsburg, State of Oklahoma, * * * to places in Haskell and Latimer Counties, Oklahoma, * * * and held * * * against her will, and at the same time making threats against her life or doing her serious bodily harm in the event she, *. * * failed and refused to * * * do as he, * * * commanded her, * * * and at the same time the said Robert Phillips was seeking an advantage from the said Jackie Parris by * * * attempting to have carnal knowledge of her, * .* .* for the purpose of violating her chastity and virtue * * *, contrary to the form of the statutes, * * *" etc.

The defendant contends that the foregoing information is duplicitous in that it first alleges kidnapping for the purpose of confinement or imprisonment within the state of Oklahoma, under the provisions of Title 21, § 741, O.S.1951; and then alleges kidnapping for the purpose of extorting a thing of value, to wit, her chastity. Title 21, § 745, O.S.1951. Thus he contends two separate crimes are alleged in the information. The essential elements of both statutes are Title 21, § 741, O.S. 1951, kidnapping with the intent to secretly confine or imprison another in this state, against his will; Title 21, § 745, O.S.1951, kidnapping and confining him against his will with the purpose of extorting a thing of value from him. So far as the allegations of kidnapping and confinement are concerned an information brought under either statute may be almost identical but to allege a completed offense under the provisions of Title 21, § 745, O.S.1951, there must be alleged in addition thereto that the confinement is for the purpose of extorting a thing of value. Hence the statutes define different crimes in some essentials alike and yet completely dissimilar as to the purpose of the confinement. Under the provisions of § 741 one may be kidnapped and confined for the alleged purpose of imprisonment while under the provisions of § 745 the kidnapping and confinement must be for the specific purpose of extorting a thing of value. The fact it may be necessary to allege in an information brought under the provisions of Title 21, § 745, O.S.1951, all the elements essential to completely charge the offense of kidnapping under Title 21, § 741, O.S. 1951, will not form the basis for the complaint of duplicity where, in addition thereto, other essential elements are alleged (for the purpose of extorting a thing of value) which takes the case out of the definitive

ambit of Title 21, § 741, O.S.1951, and brings it within the specific definitive provisions of Title 21, § 745, O.S.1951.

This information is by no means a model of pleading. Nevertheless the essential facts plead in the information, stripped of surplusage, allege all the elements of the kidnapping and confinement for the purpose of having carnal knowledge with the Parris girl and thereby extorting a thing of value from her, her chastity and virtue. Had the pleader contented himself in the case at bar with alleging the unlawful and forcible kidnapping of the victim of this crime for the purpose of causing her to be secretly confined or imprisoned in the state of Oklahoma, the case would then have come within the pertinent provisions of § 741, Title 21, O.S.1951, hereinbefore set forth, but when the pleader alleged further facts showing the object of said kidnapping and confinement was for the purpose of extorting a thing of value, her chastity, the pleader thereby removed the information from the provisions of § 741, Title 21, O.S.1951, and clearly brought the information within the provisions of Title 21, § 745, O.S.1951. We are therefore of the opinion that the information while not a model was sufficient to inform the defendant of the offense of which he was charged and the statute under which the charge was brought.

In light of the foregoing, we are further of the opinion that the third contention hereinbefore set forth charging that the information was not sufficient to allege a violation of law is wholly without merit.

Regardless of the foregoing, the information must be read in light of the delayed attack made on the same. The record discloses the demurrer was filed herein on June 15, 1951, approximately 8 months prior to the trial of the case, alleging both duplicity, and failure to state an offense, but the same was never presented to the trial court. The information was attacked after both the state and defendant announced ready for trial, and the state had concluded its opening statement; it was renewed after the state's evidence was completed. The law applicable to such a

situation is clearly stated in Jennings v. State, 92 Okl.Cr. 347, 223 P.2d 562, 563, as follows:

"Where the information has not been challenged by demurrer or motion to quash, the defendant pleads to the information and goes to trial, any objection to the sufficiency of the information should be overruled if by any intendment, inference or presumption, it can be sustained."

The trial court did not err in overruling the defendant's demurrer or objection to the introduction of evidence. In McCoy v. State, 92 Okl.Cr. 412, 223 P.2d 778, it was said:

"An information or indictment which, construed under the ordinary rules of construction, states all the essential elements of the crime charged sufficiently to enable a person of common understanding to know what is meant, and with sufficient particularity to enable a defendant to prepare for his trial, and to plead the judgment in bar, if again informed against for the same offense, is sufficient."

The information herein meets all the foregoing requirements of the law.

The defendant's fourth contention is that the trial court erred in its instruction No. 1, in instructing the jury to the effect that the defendant entered a plea of not guilty, instead of instructing the jury that he had entered a plea of not guilty by reason of insanity. The record discloses on the issue of present insanity as to the defendant's being mentally incompetent to make a rational defense that the issue was raised before trial and determined adversely to the defendant by the jury empaneled for that sole purpose on June 21, 1951, wherein in its verdict the jury found the defendant to be same. Mitts v. State, 82 Okl.Cr. 367, 170 P.2d 563. We have searched the record and in no place do we find that the defendant ever entered either a plea of not guilty or a plea of not guilty by reason of insanity. The record does not show any arraignment on the information. We do find that the defendant had counsel appointed for him and that he

agreed to go to trial without prejudice to a plea on the day of trial. On the day of trial the record is silent as to the defendant's plea if any, but it does appear that he announced ready for trial. Hence as this court has repeatedly said, this is one of the rights of the defendant which may be waived by him. We have repeatedly held that such right is waived by the defendant going to trial without objection. Fuller v. State, 70 Okl.Cr. 408, 106 P.2d 832; Brown v. State, 33 Okl.Cr. 217, 242 P. 1065; Sherman v. State, 19 Okl.Cr. 269, 200 P. 262; Simpson v. State, 16 Okl.Cr. 533, 185 P. 116. If the defendant herein ever entered a plea to the information we are unable to find it. The trial court treated the defendant as if he had entered a plea of not guilty, and so properly instructed the jury. Fuller v. State, supra; Ray v. State, 40 Okl.Cr. 413, 269 P. 509. Furthermore on the issue of insanity the record discloses that the trial court adequately instructed the jury in its instruction No. 8 on the defense of insanity both at the time of the commission of the crime and as to present ability to make a rational defense. Therefore we are of the opinion that the defendant's plea is not a matter that may now be properly raised, and that the trial court's instruction No. 1 cannot now be questioned. The record disclosing no plea being entered, the defendant having announced ready for trial, the trial court was clearly within its rights in treating the defendant's waiver of arraignment and plea as a plea of not guilty and properly instructed the jury thereon that the defendant had entered a plea of not guilty. Thereafter the evidence being sufficient to raise the issue of insanity, the trial court further properly instructed the jury thereon. Hence no error appears in the record on which to predicate this contention.

The defendant's fifth contention is that the state's evidence was insufficient to support the jury's verdict. Briefly, in this regard, the record discloses that the kidnapping was effected on the night of April 1, 1951 at about 8:15 p. m. Jackie Parris, the victim age 16, and her boy friend Bill Coghill, age 17, were sitting in his stepfather's automobile near the skating rink in Mc-Alester, Oklahoma, talking, when the defendant Robert Phillips walked by the automobile, went into the skating rink, returned, opened the back door of the automobile armed with a knife, slipped into the back seat directly behind Coghill and said "All right, Jackson, let's go. You better do what I say because I can use this gun. This knife won't make any noise. If you want to live you better do as I say". The defendant made a statement concerning about having done something for which he got 99 years. When asked about where he wanted to go the defendant stated "I will give you the directions", and he did. Coghill started the car as directed, drove out on Highway 270 through Dow, to Hartshorne, turned left there to avoid going directly through town. After passing Hartshorne they got on the old Indian Trail road to Talihina, Robbers Cave and through the State Park. During this time the record further shows Coghill and Jackie pleaded with the defendant to let them go but he said it was not within his plans. They kept driving until the automobile bogged down in a creek and they could not get it out. The defendant said he was leaving and took his handkerchief and removed all of the fingerprints from the car both inside and out. Then the defendant left Coghill in the car with the warning to stay there or he would be sorry. The defendant then took Coghill's matches and cigarettes away from him and left with Jackie carrying her across the creek and disappearing into the mountains. Believing the defendant to be armed with a gun Coghill stayed in the car for a while, then sought the girl and Phillips but could not locate them. It appears that Jackie Parris was crying when the defendant left with her, and she was pleading with him to let her go. These incidents occurred at about daylight Monday morning, April 2, 1951. The record shows the defendant dragged, jerked, threatened and otherwise frightened her into following him across plowed ground (where she tried to leave her footprints and he stopped her), through fences, over mountains and places off the main traveled highways. During this period of the crime the defendant informed Jackie Parris he intended to rape

her. He told her if she tried to run away he would kill her accompanying the threat with a display of the knife. It appears the defendant burglarized a cabin for food in the mountains and made the victim carry what he did not eat. Jackie Parris was caught marking rocks and trees with a lipstick and trying to flash her lipstick mirror for planes overhead which greatly angered the defendant. Jackie even feigned heart trouble on the climb up the mountain and wanted to rest, to which the defendant responded that she must follow if she wanted to live. On the mountain near Kinta, Oklahoma, they came upon two little cabins. The defendant crawled through a window of one of them and ordered her to follow him. Following the defendant on the inside they built a fire. Here the defendant pushed Jackie down and made her take off her jeans and pants. A fight began and Jackie related that she fought and prayed out loud to God until she was exhausted. The record shows the defendant did not accomplish the rape of Jackie Parris. She stated she told the defendant she heard pursuers coming and the defendant looked out the window at the moving lights in the vicinity of Kinta and he got scared. The defendant fled taking her with him. After some persuasion the defendant built a fire which attracted the attention of Jackie Parris' rescuers who arrived about 8:15 a. m. Wednesday morning. She further related that on one occasion she asked the defendant if he knew what he would get for this and he said, "yes, 99 years but I am not going to get 99 years when I can play insane". After her rescue Jackie was in the hospital in McAlester for several days.

The defendant's defense was that he was insane, not being able to distinguish between right and wrong. The defendant offered in support of his defense certain lay witnesses including his father John H. Phillips who related the history of insanity in the family, of two older sons and a daughter being confined in the Vinita State Hospital for the insane. He testified further that another child killed himself at the age of 24 in Kingdom, Arizona. He then testified that the defendant's mother was committed when a child down in Arkansas

before he married her. He admitted he did not know about it when he married the defendant's mother. Mr. Phillips testified the defendant was mentally ill but he didn't notice it so much until defendant kept after him about letting the defendant enlist in the army. He said the defendant would not work and would lay out of school and he would stay out late at night. When he tried to wake him up in the morning defendant would just shiver and jerk. He would get a job and then quit it. He testified the defendant was paroled from the United States Reformatory School at El Reno in about 1948 on a charge of stealing an automobile. He testified he did not believe the defendant knew right from wrong. On cross-examination he related he thought his son's discharge from the army was for some undesirable reason physical or mental, he did not remember what. He testified he left it with Judge Hosey in Idabel; though he knew the discharge was important he made no effort to locate it. He admitted his son was absent without leave several times from the army. On redirect examination he testified he was wrong about Robert's discharge being in Judge Hosey's office that the one left with Judge Hosey was one covering the boy who killed himself in Arizona. He finally said Robert got the discharge but didn't know what was on it. He testified Robert told him he lost it.

Robert Palmer who had been convicted for public drunkenness and assault and battery on his wife, testified for the defendant. He said the defendant was confined in the jail with him for about 30 days, and that the defendant was mentally sick. On cross-examination he related he had to feed the defendant Phillips, that the defendant would urinate in a bottle and then drink it. He admitted that he himself had been confined in Vinita at one time.

Mrs. Brooks, a lay witness, testified that the defendant worked for her husband and from her observations it seemed to her like he did not understand how to distinguish right from wrong.

Dr. C. O. Williams, a physician, testified the defendant was a weak-minded man who

was insane. On cross-examination however he admitted he believed the defendant did know the difference between right and wrong.

Dr. Hubert A. Wilson, a physician, testified he believed the defendant was suffering from dementia praecox. He did not testify positively whether he could distinguish between right and wrong. He said sometimes people like the defendant could and sometimes they couldn't, depending on their frame of mind.

Robert Phillips the defendant, testified in his own behalf. He rambled at great length about the underprivileged character of his early life, and how people did not understand him. He also testified to many incidents in his family designed to show the unstable nature of its membership and how the children were imposed upon when he was a boy, as to the fact his father nagged them and the community generally persecuted them. He said when he got out of the United States Reformatory he got a job at the Vee Theater but quit because his dad insisted he was not being paid enough. He testified his discharge from the army was not for mental disability but for going AWOL. He complained he could not get a job because of his federal parole status. He testified to getting in the car on the night in question about 8:30 or 9:00 p. m., armed with this knife. He admitted he told Coghill to "get going, Jackson". He denied that Jackie Parris or Coghill saw the knife. He also admitted he told Coghill he had a gun. He admitted listening to the radio for some report of himself in view of the fact that the officers might be looking for him. He related in detail the route they took, and how they got stuck in the mud and could not get out. He admitted he picked up Jackie Parris and carried her across the creek and, further that he stopped Jackie from making tracks in the newly plowed ground to keep somebody from being able to follow them. He admitted Jackie talked him into giving up. He also testified he was in some trouble in Ohio for robbery and kidnapping, which all occurred while he was in the army. He denied he said he would plead insanity or that he would get 99 years for this crime.

Dr. F. M. Adams, a psychiatrist and Superintendent of the Eastern State Hospital at Vinita, Oklahoma, testified he had this defendant under observation. He related a family history similar to that hereinbefore set forth, and said the defendant was suffering from dementia praecox. The gist of his testimony was that the defendant was mentally ill and dangerous. He said he might know right from wrong but he doesn't have the power to refrain from doing wrong. He admitted there was a distinction between medical and legal insanity. He testified the defendant's acts such as objecting to Jackie Parris making tracks in the plowed ground and leaving lipstick marks on the trees and rocks show he was trying to protect himself, either from the law or from his delusions, but he could not say which. He finally stated it was his opinion that the defendant was motivated by delusions and could not know the difference between right and wrong. He later stated he "would not want to say the defendant was suffering from a very severe form of mental illness".

Doctors T. H. McCarley and Floyd T. Bartheld, physicians, testified in substance for the state to the effect that they had observed the defendant and that it was their opinion the defendant knew the difference between right and wrong.

Several lay witnesses including Sheriff Alexander, Deputy Sheriff Clint Gladden and Deputy Sheriff Reuben Fite testified their observation of the defendant led them to believe he knew the difference between right and wrong, and understood the consequences of his acts; as did Roy Anders and Al Price, Chief of Police of McAlester, Oklahoma, and Traffic Officer, respectively.

■■ The foregoing constitutes in substance the evidence of the case which is highly conflicting, and under such conditions creates an issue of fact for the determination of the jury. Bates v. State, 91 Okl.Cr. 199, 218 P.2d 404; Stevens v. State, Okl.Cr., 232 P.2d 949, not yet reported in state reports. It has been held in cases of this character that the testimony of lay witnesses alone though in conflict with expert psychiatric testimony is sufficient upon

which to sustain the jury's verdict of sanity of the defendant at the time the crime was committed. Here the record contains testimony supporting the defendant's sanity of both medical and lay witnesses, as against the testimony of a psychiatrist and medical and lay witnesses to the contrary. Kobyluk v. State, Okl.Cr., 231 P.2d 388, 389. In considering the sufficiency of the evidence the function of the Criminal Court of Appeals is limited to ascertaining whether there is a basis in the evidence on which the jury could reasonably conclude the accused is guilty as charged. Stevens v. State, supra. There is such a reasonable basis for the jury's conclusion in the case at bar.

 Finally the defendant contends the trial court erred in overruling his motion for new trial. This contention is based on the ground of newly discovered evidence. The newly discovered evidence was in contradiction of the evidence of deputy sheriff Chester Palmer who arrested the defendant at the time of the rescue of Jackie Parris. Chester Palmer testified for the state the defendant stated to him after his arrest "he had a mind to kill the girl when it got light to where he could find a place to hide her body and get out of those mountains". Further he testified that the defendant said, "I will get out of it. I will play insane". Attached to the motion for new trial on the ground of newly discovered evidence was Eugene Sidney Stover's affidavit to the effect that he was present all the time with Palmer when the arrest was made and until the defendant was incarcerated, and that said Robert Phillips made no such statement or statements as was testified to by Palmer; that the only statement that said Robert Phillips made at the time was that he was not up there to hurt anybody. Stover's affidavit discloses that he was in the court room and heard the testimony of Palmer. It has been repeatedly held that the granting of a new trial on the ground of newly discovered evidence is a matter within the sound judicial discretion of the trial court, Armstrong v. State, 61 Okl.Cr. 352, 68 P.2d 114; and a new trial will not be allowed where it tends to impeach or discredit a witness for the state and would not change the result of the trial. Hiatt v. State, 67 Okl.Cr. 372, 94 P.2d 262. Newly discovered evidence to be available as a ground for new trial must have been discovered after the trial, and it must appear that the same could not have been had at the trial with the exercise of reasonable diligence. Title 22, § 952, subd. 7, O.S.1951; Henderson v. State, Okl.Cr., 230 P.2d 495, 23 A.L.R.2d 1292, certiorari denied 342 U.S. 898, 72 S.Ct. 234, 96 L.Ed. 673. Therein it was said, 230 P.2d at page 500:

> "Here, there appears a total lack of diligence not only to procure but to produce this evidence. In the first place all this evidence could by the exercise of due diligence have been procured before trial, and where such is the case, the failure so to do constitutes a bar to a new trial on such alleged ground. Devore v. State, 33 Okl. Cr. 403, 243 P. 999; McColloch v. State, 45 Okl.Cr. 442, 283 P. 1026; Beaver v. State, 54 Okl.Cr. 49, 14 P.2d 423; Isom v. State, 55 Okl.Cr. 173, 26 P.2d 952; Smith v. State, 78 Okl. Cr. 343, 148 P.2d 206. Nor does the motion on this ground of newly discovered evidence meet the requirements of Title 22, § 952, O.S.A.1941, for the motion did not set out the diligence used on the part of his counsel, * *."

Such is precisely the situation herein. For all the above and foregoing reasons the judgment and sentence herein imposed is accordingly affirmed.

POWELL, P. J., and JONES, J., concur.