## ALBERT STORER v. STATE.

No. A-10664.   April 30, 1947.

(180 P. 2d 202.)

Mauntel & Spellman, of Alva, and D. P. Parker, of Buffalo, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Albert Storer, was charged by information filed in the district court of Harper county with the crime of murder, was tried, convicted of manslaughter in the first degree and his punishment fixed at four years in the State Penitentiary, and he has appealed.

The defendant at the time of the homicide was the town marshal of the town of Buffalo. He also carried a

special deputy sheriff's commission. The deceased, James C. Baxter, was a soldier in the United States Army, stationed at Fort Sill, Okla. On July 12, 1944, the deceased departed from Fort Sill without leave. He arrived at Buffalo, Okla., about July 20, 1944, and registered at the hotel there under the name of James R. Bradford. Shortly after his arrival at Buffalo, he commenced work cooking at a cafe operated by one Ross Murray. About one week later the deceased had a dispute with one of the waitresses at the cafe and quit his job.

The evidence showed that in the early part of the evening of July 31, 1944, the defendant Albert Storer talked to J. J. Ownbey, sheriff of Harper county, concerning the deceased and the latter's draft status, and the sheriff told the defendant to wait until the following morning and that he, the sheriff, would meet with defendant and talk to the deceased to see whether he was a deserter from the army.

The evidence of the state showed that later in the evening the defendant and his brother, Ray Storer, who was the under-sheriff of Harper county, saw the deceased and Murray, the restaurant operator, chipping ice behind the latter's cafe. The two officers approached the deceased and the defendant inquired of the deceased as to whether he had been in the army, to which the deceased replied that he had. The defendant then asked whether he had his discharge papers and the deceased replied, "Yes, but it is in my room at the hotel." The defendant then suggested that they go to the hotel to see the discharge papers. The defendant and deceased then started through the restaurant to secure the hat of deceased before going to the hotel.

Several people saw them as they emerged from the cafe and started walking up the highway which ran in front of the cafe. They testified in substance that the deceased was walking a few feet in front of the defendant; that both men were walking fast but that the deceased was walking faster than the defendant; that the defendant pulled his pistol from its holster and asked the deceased to stop; that the deceased stopped at that point and defendant engaged in further conversation with him. They were talking at the side of the highway which ran through the town. At this point two cars were seen approaching, one from the south and one from the north. To avoid the car heading in the northerly direction, the town marshal stepped to the east side of the highway, while Baxter stepped to the center of the highway. The deceased then ran to the other side of the road. The defendant yelled to him to halt and then fired, striking the deceased almost in the center of the back. The bullet passed through the trachea and caused the death of Baxter in a few minutes. Some of the witnesses testified that after the deceased was shot, he asked the defendant to pick him up and defendant told his brother to get a flashlight and that if Baxter started to get away that he would shoot him again.

On behalf of the defendant, the proof showed that defendant had been a peace officer for several years. That he had attended a meeting of peace officers at Woodward, at which time the F. B. I. had asked all persons to apprehend deserters and those not having draft registration cards. The defendant testified that he saw the stranger shortly after he came to Buffalo and heard that his name was Bradford. That he commenced to get suspicious of him and told the sheriff that he thought they should investigate him. That he and his brother went to the rear of the cafe and that his brother asked the deceased for his

registration card and deceased said it was at the hotel; that the undersheriff told the deceased that he was under arrest and further directed the defendant to go with deceased to the hotel to see his papers and that if he was right to let him go and if he wasn't to bring him back. That defendant and deceased stopped to talk on the highway. Deceased told defendant that he had no identification papers, and defendant said "I will have to put you under arrest until we see about it." That the deceased then said to the defendant, "I will kill you before morning, I am out and I am not going back." That the deceased then hit defendant and ran; that defendant yelled for him to stop; that deceased ran into the shade of some trees out of sight of defendant and defendant fired a shot in that direction without being able to see the deceased, without intending to hit him, but solely to try to stop him.

It is contended that defendant did not have a fair and impartial trial because of the admission in evidence over the objection of defendant of bloody garments worn by deceased at the time of his death, and further that the court erred in admitting evidence of the conviction by the defendant several years before for the crime of stealing cattle after the defendant had admitted that he had been convicted of such crime.

This court will closely scrutinize all the record in every case in which appeal is taken to see whether or not reviewing the record as a whole, the defendant has been given a fair and impartial trial and whether his conviction has been in accordance with constitutional principles. This is done whether the question is properly preserved in the lower court for presentation on appeal or not. Rieckert v. State, 78 Okla. Cr. 111, 144 P. 2d 117; Wooten

v. State, 70 Okla. Cr. 292, 106 P. 2d 132; Dunbar v. State, 75 Okla. Cr. 275, 131 P. 2d 116.

The admission of the clothing in the evidence was proper. Morris v. State, 6 Okla. Cr. 29, 115 P. 1030; Saunders v. State, 4 Okla. Cr. 264, 111 P. 965, Ann. Cas. 1912B, 766; Jones v. State, 17 Okla. Cr. 561, 190 P. 887; Dobbs v. State, 39 Okla. Cr. 368, 265 P. 661; Brantley v. State, 15 Okla. Cr. 6, 175 P. 51.

The state contended that the fatal shot was fired while the deceased had his back to the defendant and wholly without any legal provocation. The state's proof showed that defendant was an expert shot with a pistol and the admission of the clothing refuted the contention of defendant that he did not fire at the deceased but only fired his gun in the air to try to get the deceased to stop, but wholly without any intention of hitting him. In connection with this same assignment of error, counsel for defendant contends that the state placed the wife of the deceased on the witness stand in rebuttal and asked her a series of questions which were incompetent and were propounded to the witness for the sole and only purpose of creating prejudice against the defendant. These questions in substance concerned the funeral of the deceased and were asked and answered without objection by counsel for defendant. The wife testified that the deceased was given a military funeral. That the government furnished the coffin and his body was returned to their home with a military escort. She further testified that during the period of time her husband was in the army, she received $120 per month compensation from the government for herself and three children. Throughout the trial, it was made to appear on the part of the defendant, either through direct statements of his counsel or through in-

ferential evidence introduced in his behalf, that the deceased was a deserter from the United States Army, and that such a crime was a felony. That the defendant had reasonable grounds to suspect commission of such a crime. That by reason thereof he had a lawful right to arrest the deceased and to fire the fatal shot if necessary to prevent his escape after his lawful arrest. We are unable to see the materiality of some of the questions asked by counsel for the state, but in view of the fact no objections were interposed to the questions, we do not believe that the asking and answering of these questions were in themselves so fundamentally erroneous as to constitute reversible error. The first objection interposed by counsel for defendant to that line of testimony was sustained by the court. The state contended that the fact that the government continued to pay compensation to the wife of deceased during his absence from the service and that he was given a military funeral conclusively refuted the theory that the deceased was a deserter.

In connection with this same assignment of error, it is contended that the court erred in admitting in evidence the information, the verdict, warrant, and judgment and sentence in the district court of Harper county to show the conviction of the defendant for the crime of stealing cattle in 1919; and further erred in admitting in evidence certain exhibits from the office of the court clerk to show the alleged commission by the defendant of the petit larceny offense of stealing watermelons.

In the direct examination of the defendant, counsel inquired concerning the conviction which the defendant had sustained for the theft of cattle when he was a youth 18 years of age. On cross-examination, no further inquiry concerning this conviction was made by counsel for the

state. Several witnesses for the defendant testified concerning his good reputation in the community where he resided. On cross-examination, counsel for the state properly inquired of these witnesses whether they had heard as a part of his general reputation the fact that he had been convicted of stealing cattle and of stealing watermelons. Some of them admitted that they had heard of these convictions.

It is well settled that a defendant, the same as any other witness, may be asked on cross-examination for the purpose of affecting his credibility, whether he has ever been convicted of crime, and if he denies the alleged conviction, the state on rebuttal may introduce proof of such conviction. 12 O. S. 1941 § 381; Pryor v. State, 51 Okla. Cr. 345, 1 P. 2d 797; Flynn v. State, 68 Okla. Cr. 72, 96 P. 2d 96; James v. State, 64 Okla. Cr. 174, 78 P. 2d 708.

In James v. State, supra, it is held:

"A defendant by availing himself of the privilege of testifying in his own behalf thus waives his constitutional privilege and has all the rights and is subject to the same rules of cross-examination and impeachment as other witnesses.

"The statute, [Okla.] St. 1931, § 268, 12 Okla. St. Ann. § 381, permits proof of a prior conviction of the defendant in a criminal case for the purpose of affecting his credibility. This proof may be made either by the record or on cross-examination of the defendant."

In view of the fact that the defendant had admitted his former conviction of cattle stealing, it was not necessary for the state to again encumber the record by showing such conviction, but it certainly did not constitute error for such proof to be made. The state failed to introduce the judgment and facts showing the disposition of the

case wherein the defendant was charged with the misdemeanor of stealing watermelons, but in view of the testimony by the witnesses for defendant concerning his conviction for this petit offense, such/failure of proof did not affect the situation as presented to the jury. The proof of conviction was not complete until the judgment and sentence was identified and introduced in evidence. It is not competent to prove that a person has been charged with a crime for the purpose of affecting his credibility, but it is only competent to show that he has been convicted. The failure to introduce the judgment in the misdemeanor case is probably accounted for by reason of the confusion that arose during the testimony of the court clerk. Counsel for the state first inquired of the clerk concerning the various exhibits in the felony case. Inquiry was then made concerning the various exhibits in the misdemeanor case. The misdemeanor case was filed as No. 360 in the county court. The felony case was filed as No. 146 in the district court. After identifying the information and warrant in case No. 360, counsel then inquired about the verdict in case No. 146, and the exhibit was admitted in evidence after full proof of the conviction in that case had already been given. However, as we have hereinabove stated, the failure of the prosecution to prove a conviction in the misdemeanor case does not constitute reversible error in view of the other evidence bearing on this question.

It is further urged that the court committed error in giving instruction No. 7, which reads as follows:

"You are instructed that the statutes of the State of Oklahoma provide that;

"Any person who willfully discharges any species of firearms, airgun, or other weapon in any public place, or in any place where there is any person to be endanger-

ed thereby, although no injury to any person shall ensue, is guilty of a misdemeanor.

"You are therefore instructed that if you can find and believe from the evidence in this case, beyond a reasonable doubt, that the defendant, Albert Storer, at and in the county of Harper and State of Oklahoma, on the date alleged in the Information, unlawfully and willfully, in a public place, shot off his pistol, and you further believe and find from the evidence, beyond a reasonable doubt, that the deceased was killed by the discharge of said pistol in the hands of the defendant, although without any intention or premeditated malice or design on the part of the said Albert Storer to shoot and kill the said James R. Bradford, alias James C. Baxter, and you further find and believe, beyond a reasonable doubt, that said act was willfully and unlawfully done, in violation of the law making it a crime to shoot upon the public highway or public place, then, in that event, you will find the defendant guilty of manslaughter in the first degree and so say by your verdict. On the other hand, if after a careful, fair consideration of all the evidence in this case you have a reasonable doubt of the guilt of the defendant, you will give him the benefit of such doubt, and acquit him."

This instruction should be read in connection with all of the other instructions, and particularly with instruction No. 6, which defined the crime of manslaughter in the first degree, and instruction No. 8, which instructed the jury further in connection with No. 7. In instruction No. 6 the jury was instructed, among other things, that 'homicide is manslaughter in the first degree when perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor." The misdemeanor which the state contended was being committed by the defendant and which was defined in the first part of instruction No. 7, is set forth in the Okla. Statutes as 21 O. S. 1941, § 1364.

We had occasion, to consider an instruction in almost identical language given by this same trial judge and in which present counsel for defendant represented the defendant in the other case. Feil v. State, 81 Okla. Cr. 133, 161 P. 2d 770. The facts in that case were in many ways similar to the facts in the instant case. The defendant, Feil (town marshal), was convicted of the crime of manslaughter for shooting a high school student while fleeing to escape arrest for a misdemeanor. The applicability of this instruction was unheld in the Feil case.

The defendant contended that he did not intend to kill deceased but fired in the darkness merely to scare him. If the deceased had willfully fired his gun in a public place without intent to hit anybody and had killed a bystander, then clearly the instruction given by the court would have been applicable. We do not see why it would not apply with equal force to the theory of the state as to the shooting of deceased. If the defendant did not have the lawful authority to arrest deceased, then the deceased at the time of the homicide was in the same position so far as defendant's legal responsibility for his death was concerned as would have been an innocent bystander. Defendant said he fired in the dark without intent to hit anyone. An officer is just as liable as an ordinary layman when he discharges his gun in a public place where people are liable to be injured thereby, unless such firing of the gun is in the discharge of his lawful duties as an officer. The question as to whether the defendant had made a lawful arrest of deceased and setting forth the grounds which authorize an officer to arrest without a warrant were defined in instruction No. 2 and no complaint is made as to the correctness of such instruction.

The defendant complains in his brief of instruction No. 10, which reads as follows:

"You are further instructed that any person subject to military law who deserts or attempts to desert the services of the United States, shall, if the offense be committed in time of war, suffer death or such other punishment as the court martial may direct. In this connection you are instructed that absence of a soldier without leave is not desertion, unless an intention not to return to the service be shown. Desertion is the act of a soldier in absenting himself from his regiment, station or duty, and from the service, without authority, and with the intention of not returning; the absence may be originally without authority or it may begin at the end of a furlough or other leave of absence, or it may be originally involuntary, as where a soldier having been captured by the enemy fails to return to the service on escaping or being released from captivity; a deserter is one who is guilty of desertion.

"And in this connection you are further instructed that the military laws of the United States provide that it shall be lawful for any civil officer having authority under the laws of the United States, or of any state, territory, district or possession of the United States to arrest offenders, summarily to arrest a deserter from the military service of the United States and deliver him into the custody of the military authorities of the United States."

No exception was taken to the giving of this instruction. The latter part of said instruction was taken from a requested instruction presented by counsel for defendant and is a quotation from the Federal statute. Tit. 10 U. S. C. A. § 1578. There is no misstatement of law in said instruction. It should have been more comprehensive in that it would have been better for the court to have instructed the jury whether the crime of desertion was a felony and whether the crime of absence without leave from the military forces was a felony or misdemeanor. By

inserting such into the instruction the court would have better enabled the jury to have applied some of the law given in other of the court instructions. However, is is well settled in this state, that where no exception is taken to the giving of an instruction, the giving of the same will not be considered as error, unless it is so fundamentally erroneous as to mislead the jury and thus deprive the defendant of his constitutional right to a fair and impartial trial. If counsel for the defendant had not been satisfied with this instruction and had thought that additional instruction on the question should have been given, it was his duty to call the matter to the attention of the court by requested instruction. Merriott v. State, 18 Okla. Cr. 247, 194 P. 263; Dickson v. State, 26 Okla. Cr. 403, 224 P. 723.

Counsel for defendant filed a motion for a new trial on the ground of newly discovered evidence. The alleged newly discovered evidence consisted of a transcript from the office of the Adjutant General giving a full and complete record of the military career of the deceased. This record showed that during a large part of the time the deceased was enlisted in the United States Army that he was absent without leave. Most of this evidence, in one form or the other, was brought out during the trial. If the record had been available at the time of the trial and admitted in evidence, it would not have substantially affected the issues. The defendant had no knowledge of the military record of the deceased and everything that he did was on mere suspicion. The evidence in the record before us just fails to disclose any legal justification for this killing.

When this case is thoroughly considered from every angle, and all of the various assignments of error have

been analyzed, there is one glaring feature of the case and that is that the defendant shot the deceased in the back, without adequate provocation, while he was fleeing. All of the collateral elements of the case which are presented as grounds for reversal of the judgment of conviction were evidently taken into consideration by the jury in mitigation of the punishment as they only assessed the minimum punishment of four years' imprisonment in the State Penitentiary. No record is appealed to this court that is perfect in every detail. It is sometimes easy to forget the living trial in the search for error in a dead record. The trial was conducted in substantial compliance with the law. Another trial judge might have handled the case differently in some details, but if there are any irregularities of procedure, they were not such as deprive the defendant of any substantial rights. We do not agree with some of the statements made by the Assistant Attorney General in his brief, especially with that part which castigated the defendant concerning his activities as town marshal, nor do we agree with him that the jury should have given the defendant death in the electric chair or life imprisonment for this offense.

The punishment which was meted out under every view of law was reasonable and just and the judgment and sentence of the district court of Harper county is accordingly affirmed.

BAREFOOT, P. J., and BRETT, J., concur.