## CORNETT v. STATE.

No. A-11626.  Oct. 29, 1952.

(250 P. 2d 55.)

Sam S. Gill and Homer Caldwell, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., L. A. Wallace, Ass't Atty. Gen., for defendant in error.

JONES, J. The defendant, J. Weldon Cornett was charged by an information filed in the court of common pleas of Oklahoma county with the crime of unlawful possession of intoxicating liquor, was tried, convicted, found guilty by verdict of the jury who left the punishment to be fixed by the court. Thereafter, the accused was sentenced to serve 60 days in the county jail and pay a fine of $250, and has appealed.

The following assignments of error are presented: (1) The information failed to state any offense. (2) The trial court committed error in refusing a continuance. (3) The Federal retail dealer's stamp was inadmissible because not identified as belonging to the defendant. (4) The trial court erred in refusing to instruct on circumstantial evidence. (5) The evidence is insufficient on which to base a conviction.

We shall consider these assignments in the order in which they are presented.

No challenge was interposed to the information by demurrer, or in any other manner, and the question as to the alleged sufficiency of the information is raised for the first time on appeal. It was not set up as one of the alleged errors in the motion for new trial. Under such circumstances, unless the information is so fundamentally erroneous that it wholly fails to state any facts

sufficient to charge a crime so as to give the court jurisdiction to try the accused, this assignment may not be considered. Brannon v. State, 94 Okla. Cr. 261, 234 P. 2d 934. The information charged that defendant: "unlawfully had possession of intoxicating liquors, to-wit: Twenty-three (23) pints of tax paid liquor and two (2) 4/5th quarts of tax paid liquor." It would have been better pleading for the county attorney to have specifically stated the nature and kind of intoxicating liquor possessed by the accused, that is, whether it was whiskey, which this court states is per se intoxicating, or some other alleged intoxicant. However, the information in general terms does state that the accused had possession of intoxicating liquors and we think it is sufficient to confer jurisdiction on the trial court to try the accused for the illegal possession of intoxicating liquors. If the information had been challenged by demurrer the court would probably have directed the county attorney to file an amended information specifically setting forth the nature and description of the intoxicants allegedly possessed by the accused.

In connection with the second assignment of error, concerning the refusal of the court to grant the accused a continuance, there is joined with it the alleged error of the court in refusing to issue an attachment for two witnesses which had been duly subpoenaed by the accused. The Attorney General has confessed error in connection with this assignment of error and also with the alleged assignment of error that the court committed error in refusing to give an instruction on circumstantial evidence.

The witnesses subpoenaed by the defendant were Ted Dobkins and Roy Nicholson. Counsel for the accused asked the court to issue attachments for these two witnesses, which request was refused. In their motion for continuance counsel for the accused state that if Dobkins were present as a witness he would testify that he had charge of the Highland Club, (which was the place raided by the officers and was where the intoxicating liquors were found), from January 1, 1951, continuously up to and including the night when the raid was made on January 6, 1951; that defendant was not at any time on the premises during said period of time and was not there at the time the raid was made and that the witness knows positively defendant did not put the whiskey on the premises.

In the motion it was further alleged that the witness Roy Nicholson would testify that he was a deputy sheriff of Oklahoma county for two years; and he was familiar wih the Highland Club; that he had been to the place on a number of occasions; that he had never seen any whiskey, and had never found any whiskey at the place and had never heard of the defendant selling whiskey. The county attorney refused to admit that if the witnesses were present they would testify to the facts alleged in the motion, but no countershowing of any sort was made by the prosecution. From what was stated by the court, he overruled the motion for continuance because in his opinion no diligence had been used to secure their attendance.

This is not a case where the defendant waited until the last day to issue subpoenas and the officers had failed or had been unable to serve them. Here the witnesses were actually served. Where the witnesses are actually served the day prior to the trial, as shown by this record, then the issue of diligence would not arise because the witnesses were under a legal duty to appear in accordance with the command of the subpoena. Upon their failure to so do the accused was entitled to an attachment to secure their presence. We think under all the circumstances of the case, especially considering the weakness of the state's case, that the court should have issued an attachment for these two witnesses and under the circumstances his failure so to do or to grant a reasonable continuance constituted reversible error.

The last three assignments of error are so connected that we shall consider them together because they all require a consideration of the evidence.

The evidence of the state showed that certain officers of Oklahoma county armed with a search warrant went to the Highland Club at 5656 East Reno Street in Oklahoma City and made a search on January 6, 1951. Certain bottles of whiskey were found which formed the basis for this prosecution. The defendant was not present at the time the raid was made but came to the place a few minutes later while the officers were still there. He denied ownership of the whiskey when talking to the officers. Officers Frank Lynch, Larkin Lamb and James Harrod testified for the state. Upon being asked a question as to whether they knew who owned the place, each of these witnesses answered in the negative. They further stated they did not know whether the place was owned by a corporation or by an individual. The only proof in any manner connecting the accused with the operation of the place was the fact that the officers testified defendant's eighteen year old son Jimmy was there at the club at the time the raid was made and appeared to be in charge and that he stated when served with warrant, "He would call his father". There was no direct proof by any witness that the defendant was the owner or operator of the establishment or had actual personal knowledge of the whiskey which was found. Of course, if he had been the owner or operator of the establishment there would have been a sufficient showing to have connected him with the whiskey which was found within the establishment concealed near the bar.

There was also introduced in evidence, over the objection of the defendant, a certified copy of a federal retail liquor dealer's stamp issued to one Joe W. Cornett covering the premises where the liquor was found. However, the witness Harrod on cross-examination by counsel for the defendant stated that he knew positively that Joe W. Cornett and the defendant were one and the same person. Under such circumstances the license was admissible in evidence not only for the purpose of showing the intent with which the liquors were possessed, but it was an important circumstance to be considered in connecting the defendant with the operation of the premises which were raided.

It is, therefore, our conclusion that the court did not err in admitting in evidence the federal retail liquor dealer's stamp.

Counsel for the accused requested an instruction on circumstantial evidence after the court had given the instructions. All of the evidence of the state was circumstantial and under such a state of the record it was the court's duty to give the jury an instruction on circumstantial evidence. Smith v. State, 90 Okla. Cr. 56, 210 P. 2d 190. The request for such instruction was not made until after the court had read its instructions to the jury. However, counsel for the accused stated that he and the assistant county attorney had discussed the instructions in the court's presence in the chambers of the court before the instructions were prepared and that he understood that an instruction on circumstantial evidence was included in the list of instructions prepared by the court. The county attorney had commenced his opening argument when the request was made. The county attorney admitted to the court that there was a discussion on circumstantial evidence in his chambers, but the court stated that he never heard such discussion.

We think the court erred in denying the request of counsel for an instruction on circumstantial evidence. No question would have arisen as to whether the defendant would have been entitled to it if the request had been made prior to the time the instructions were given to the jury. We do not think the defendant waived his right to such instruction by reason of the fact that no request was presented until after the instructions had been given. The instructions were not

submitted to counsel before being read to the jury and, according to his statement dictated in the record at the time the request for such instruction was made, he thought that the court had agreed to give an instruction on circumstantial evidence. The court's failure to so do constituted reversible error.

The defendant did not testify and offered no evidence in his behalf. As hereinabove pointed out, the evidence of the state as to the ownership of the whiskey was weak. However, there are these circumstances which do connect the accused to the premises where the liquor was found: 1. His minor son Jimmy was apparently in charge of the place and when the officers handed him the search warrant he stated, "I will call my Father". (This heresay statement was admitted without objection.) 2. Defendant appeared on the scene within a short time after the telephone call was made while the officers were still there. 3. A federal retail liquor dealer's license was issued to the defendant covering the premises in question on November 22, 1950, about six weeks before the raid. This license was effective until June 30, 1951.

For the errors hereinabove discussed, the case is reversed and remanded to the court of common pleas of Oklahoma county with instructions to grant the accused a new trial.

BRETT, P. J., and POWELL, J., concur.