Milo K. SLATER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12285.

Criminal Court of Appeals of Oklahoma.

April 4, 1956.

194

Hickman & Hickman, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Milo K. Slater, plaintiff in error, hereinafter referred to as defendant, was charged by information filed in the Municipal Criminal Court of the city of Tulsa, Oklahoma, with the offense of driving a motor vehicle on a public highway while under the influence of intoxicating liquor, was tried before a jury, convicted, and his punishment fixed at imprisonment in the county jail of Tulsa County for a period of thirty days. Appeal has been perfected to this court.

For reversal defendant argues in his brief four propositions, and being that the court erred as follows: (1) In overruling defendant's objection to the information; (2) In overruling defendant's demurrer to the evidence in that the State failed to prove venue; (3) In overruling defendant's motion for a new trial; and, (4) In refusing to give defendant's requested instruction.

The State in making out its case used three witnesses, Kenneth Gandall, the arresting officer; Roy Housouer, the officer who gave defendant the Harger breath test and the manual test; and Dr. M. O. Hart, who gave an expert's opinion concerning the Harger breath test or drunk-o-meter

test, and the effect of alcohol on the human body.

The defendant did not testify, and offered no evidence.

The evidence of the State proved conclusively that the defendant was operating his automobile at the time charged at a point in Admiral Boulevard and Atlanta Street, while under the influence of intoxicating liquor, was arrested by a Tulsa police officer and taken to the Tulsa police station and charged. Defendant's breath tested 0.35. A person whose breath would test 0.15 was shown to be considered intoxicated. There is no dispute as to the defendant having been very much intoxicated at the time of his arrest .

We would attempt to focus the issues more clearly by quoting the charging part of the information and referring to the statutory provisions involved.

The pertinent portion of the information reads:

"* * * On or about the 24 day of August, 1955, within the corporate limits of the city of Tulsa, Tulsa County, Oklahoma, Milo K. Slater, the above named defendant, did then and there unlawfully and wrongfully and wilfully and knowingly drive and operate a certain motor vehicle, to-wit: a 1951 Kaiser automobile, over and upon a public highway in the county of Tulsa, Okla., to-wit: At a point in Admiral Blvd. & Atlanta St., in the city of Tulsa, Oklahoma, while under the influence of intoxicating liquor, in violation of Section 93, Title 47, of the 1941 Revised State Statutes of the State of Oklahoma, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Oklahoma."

Considering defendant's first proposition, it will be noted that it is stated in the information that the crime charged was in violation of "Section 93, Title 47, of the 1941 Revised State Statutes of the State of Oklahoma", whereas the crime charged happened on August 24, 1955, at a time such statute was not in effect. The 1941 statute had been carried over into the code of 1951

and was adopted and accepted by the 1953 Legislature as the law. However, on May 16, 1955, there became effective House Bill No. 814, chapter 4, Title 47, § 93, S.L. 1955, p. 263, 47 O.S.Supp.1955 § 93, which amended and supplanted 47 O.S.1951 § 93.

A comparison of Section 93, Title 47 O.S. 1941, 47 O.S.1951 § 93 and the amendatory statute, House Bill 814, chapter 4, Title 47, Section 93, S.L.1955, p. 263, 47 O.S.Supp. 1955 § 93, will disclose that the only difference in the law that became effective May 16, 1955 and the law just prior thereto, is in the penalty provision. This latter change will be discussed later in connection with defendant's fourth proposition.

■ Under the facts stated, did the erroneous reference in question actually prejudice the defendant, or violate any substantial right?

We note that the only plea made by the defendant prior to commencement of trial was one of not guilty. The sufficiency of the information was not challenged by demurrer until after the jury had been impaneled and sworn to try the case, and the State's first witness had been sworn. Counsel then interposed an objection to the introduction of evidence on the ground that the informaton was duplicitous and was further defective by reason of referring to the crime charged as a violation of Tit. 47 O.S.1941 § 93 rather than Tit. 47 O.S.Supp. 1955 § 93. The court overruled counsel's objection. Counsel did not thereupon ask the court to require the prosecution to elect on which section of the statute he was relying for conviction. However, the instructions to the jury clearly discloses that the court instructed the jury for an alleged violation of the 1955 Act instead of 47 O.S. 1941 § 93. And as we have pointed out, the only change made by the 1955 amendment was to the matter of punishment upon conviction.

We find that the information charges but one offense, and that all the ingredients necessary to constitute the offense charged are alleged in the information, and that the matter complained of under the facts in this particular case caused the defendant to suffer no prejudice to his rights by the refusal of the court to sustain his objection to

the introduction of evidence on behalf of the State.

 In the case of Phillips v. State, Okl.Cr., 267 P.2d 167, 168, which we find applicable here, we said, paragraphs 2 and 3 of the syllabus:

"Where the information has not been challenged by demurrer or motion to quash, the defendant pleads to the information and goes to trial, any objection to the sufficiency of the information should be overruled if by any intendment, inference or presumption, it can be sustained.

"An information or indictment which, construed under the ordinary rules of construction, states all the essential elements of the crime charged sufficiently to enable a person of common understanding to know what is meant, and with sufficient particularity to enable a defendant to prepare for his trial, and to plead the judgment in bar, if again informed against for the same offense, is sufficient."

Concerning the proposition that the State failed to prove venue and for such reason the court erred in overruling defendant's demurrer to the evidence, we note that the demurrer in question did not in exact words urge upon the court that the State had not proven venue, but merely that "the defendant further demurs for the reason this court is without jurisdiction." Why such contention was advanced is not stated. Counsel's argument must fail for two reasons. First, it is true that there is no direct evidence in the record proving venue. However, the rule is well established that venue may be proven by circumstantial evidence. Payne v. State, Okl.Cr., 276 P.2d 784. We note from the record the following circumstances bearing on venue:

The arresting officer, Kenneth Gandall, testified that he had been serving on the Tulsa police force for three years and was assigned to the patrol division. He testified by use of an intersection board, in visually demonstrating the intersection of Admiral Boulevard and Atlanta Street. He told about his problem of getting the defendant's car stopped; about phoning for a wrecker for defendant's car, and to taking defendant to the station, informing him of his constitutional rights on reaching there, etc. The officer explained that he was in a police car, plainly marked, and was on duty at the time of the arrest and in uniform. He said that after he caused the defendant to enter the patrol car he "drove downtown".

 In Hatfield v. State, 49 Okl.Cr. 41, 292 P. 1058, we said:

"The venue does not have to be proven beyond a reasonable doubt. There must be some proof of venue, but, where facts and circumstances are proven from which reasonable and rational inferences arise that the offense was committed in the county charged, the proof of venue will be sufficient."

 We conclude that the trial judge was never given an opportunity to pass upon the question of venue. Defendant offered no proof raising the question of venue, and made no motion for a directed verdict on the ground of failure to prove venue. See Swift v. State, 92 Okl.Cr. 43, 220 P.2d 300; Kilpatrick v. State, 90 Okl.Cr. 276, 213 P.2d 584; and, Edwards v. State, 25 Okl.Cr. 167, 219 P.2d 427. In the Swift case, we said, paragraphs 2 and 3 of the syllabus:

"If the defense has reason to question venue, counsel should not sit idly by and avoid the issue. If the defendant desires to challenge the venue because of insufficient proof of venue, not only should this issue be raised in the Motion for New Trial, but request for an instructed verdict should be interposed, in order that the trial court might have opportunity to pass on the matter.

"Unless the defense raises the question of venue by request for an instructed verdict because of insufficient proof of venue and also as a ground in Motion for New Trial, Criminal Court of Appeals will seek to uphold the jurisdiction of the trial court, because to do otherwise would encourage invitation of error."

 Another reason the contentions advanced must fail is that "Courts sitting in

a city judicially notice streets, squares, and public grounds thereof, their location, and relation to one another, and the direction in which they run as laid down on an official map of the city." 20 Am.Jur., Evidence, § 54. Presumably the Municipal Criminal Court of the city of Tulsa took judicial notice of the fact that Admiral Boulevard and Atlanta Street were located in Tulsa. There was no contention to the contrary. Moreover, this court will take judicial notice that the Municipal Criminal Court of the city of Tulsa holds its sessions only in the city of Tulsa, and that its territorial jurisdiction in the within trial was limited to the boundary of the city of Tulsa.

The third assignment of error relates to the admission of certain alleged prejudicial evidence brought out by defendant's counsel in his cross-examination of Officer Gandall, where counsel had asked the witness what was said by defendant after he had put him in the patrol car and they were on their way down town. "A. I asked him if he had ever been arrested before. Q. You asked him if he had been arrested before? What else did you ask him? What did he say? A. He said he had." Of course it is ordinarily improper for an officer to testify as to an accused having been arrested before. But the alleged prejudicial answer was brought out by defendant's counsel. At all events, however, the contention that the court committed reversible error in refusing to exclude such evidence, and in denying the motion for a mistrial, is without merit, for as we have so often said, a judgment of conviction will not be reversed on the ground of improper admission or exclusion of evidence, unless after an examination of the entire record it appears there has probably been a miscarriage of justice, or a substantial violation of some constitutional or statutory right of the defendant. We have heretofore pointed out that the evidence against defendant was overwhelming.

The fourth and final specification of error, though not much space is devoted to it by either the appellant or the State, impressed us at the time of oral argument, and has necessitated a close review of former opinions. It is urged by counsel that the trial court erred in refusing to give their requested instruction as follows:

"The defendant requests the court to advise the jury in instruction No. 4 that if they find the defendant guilty that there is a mandatory revocation of his driver's license by the safety responsibility Commission."

Instruction No. 4 referred to and given by the court without the requested amendment reads:

"You are instructed that it shall be unlawful for any person who is under the influence of intoxicating liquor to operate or drive a motor vehicle on any public highway or street in the city of Tulsa, Oklahoma, and any person violating the provisions of this section shall be deemed guilty of a misdemeanor, and shall be punished by imprisonment in the county jail not less than 10 days nor more than one year, or by a fine of not more than $500.00 or by both such imprisonment and fine."

See generally Sections 271–313 of Title 47 O.S.1951. Specifically, it is provided by Section 295 of the Title that:

"The Commissioner shall forthwith revoke the license of any operator or chauffeur upon receiving a record of such operator's or chauffeur's conviction in any court of record of any of the following offenses, when such conviction has become final.

\* \* \* \* \* \*

"2. Driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug; \* \* \*."

Section 294 provides that a court of record must, after final conviction, require motorist to surrender operator's or chauffeur's license and forward them to Commissioner of Public Safety. See in this connection: Ashcraft v. State, 68 Okl.Cr. 308, 98 P.2d 60; Campbell v. State, 83 Okl.Cr. 108, 173 P.2d 584; McDaniel v. State, 94 Okl.Cr. 237, 233 P.2d 325; Thrasher v. State, 94 Okl.Cr. 105, 231 P.2d 409; Robedeaux v. State, 94 Okl.Cr. 171, 232 P.2d 642; Gentry v. Blinn, 184 Okl. 9,

84 P.2d 27; and West v. State, Okl.Cr., 277 P.2d 199.

From the above it appears that prior to the 1955 amendment in question it was, as now, the mandatory duty of the Commissioner of Public Safety to revoke the driver's license of a person convicted of driving while drunk, or more properly "driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug". So there has really been no change in the law so far as the duties of the trial court and jury are concerned, except in the fixing of penalties as heretofore set out. In fact, the duties of the Commissioner of Public Safety are no different. It was his mandatory duty, under Sections 294-295 of Title 47, to revoke the license of the drunk driver prior to the 1955 amendment in question, and is still his duty so to do, by reason of Sections 294–295 as well as the amendment to Section 93 made by the 1953 Legislature and the 1955 Legislature.

But counsel for the defendant argue that now that the penalty provision of the amended Act of 1955 under consideration provides for the revocation of the driver's license of a person convicted under Section 93, Tit. 47 O.S.Supp.1955 § 93, such is a part of the penalty, and the jury is entitled to know that the accused will automatically have his driver's license forfeited if convicted, and the court should so advise the jury.

It has already been pointed out in this opinion that the law involving the operation of a motor vehicle upon a public highway by an intoxicated person, prior to the effective date of the 1955 amendment, House Bill No. 814, Chapter 4, Title 47, § 93, S.L.1955, p. 263, effective May 16, 1955; 47 O.S.Supp.1955 § 93, which amended 47 O.S.1951 § 93, as well as after such effective date, did not change the law governing drunk driving in any respect, *except the penalty that might be assessed by the jury,* and of course where a jury might be waived or where the jury was unable to agree upon the punishment to be assessed and left that to the court.

The penalty provision in the 1955 amendment, referred to reads:

" * * * and any person violating the provisions of this Section shall be deemed guilty of a misdemeanor for the first offense and upon conviction therefor shall be punished by imprisonment in the County Jail for a period of time not less than ten (10) days or more than one (1) year, and a fine of not more than Five Hundred Dollars ($500.00), *and shall have his driver's license revoked for a period of twelve (12) months by the Commissioner of Public Safety of the State of Oklahoma.* * * * (Emphasis supplied.)

It will be at once noted that should an accused be convicted then it would be the mandatory duty of the Commissioner of the Public Safety to revoke such motorist's driver's license for a period of twelve months. This duty would automatically devolve upon the Commissioner, irrespective of whether the convicted person was to be imprisoned for the minimum of ten days and without fine, or the maximum of one year, plus a fine of $500 or less.

Prior to the 1955 amendment the last clause of the penalty provision above quoted was not a part of Section 93 of Title 47, O.S.1941, or 1951, but was separate therefrom.

The argument advanced seems predicated on language in some of our former opinions wherein we said, "The question of whether the defendant would lose his driver's license if found guilty is no part of the penalty prescribed by [47 O.S.1951 § 93], and was not an issue for the jury to determine." (Bisanar v. State, 93 Okl.Cr. 7, 223 P.2d 795, 797.) With correction to the statutory reference, 47 O.S.Supp.1955 § 93, we still adhere to this statement. Therefore, conceding that the statute as amended now makes the forfeiture of the driver's license a part of the penalty, the question of forfeiture is still not an issue for the jury to determine, or for the court to determine. As said in Thrasher v. State, supra [94 Okl.Cr. 105, 231 P.2d 411]:

"The legislature, in its wisdom, acting under its police power, has decreed that a person convicted of driving an

automobile on the public highway while under the influence of intoxicating liquor should have his license revoked by the Commissioner of Public Safety. This forfeiture might be compared in a way to some of the civil rights forfeited by a person who served a term of imprisonment in the penitentiary upon a conviction of a felony, such as his right to serve upon a jury, or to vote, etc."

This statement is still approved.

We do not find the punishment fixed excessive under the facts in the case. It would appear that the defendant was indeed fortunate to have been stopped by the officers before he had caused great damage to himself or to others by his erratic operation of his automobile.

The judgment appealed from must be and is affirmed.

JONES, P. J., and BRETT, J., concur.