Samuel Kinnard OATES, Plaintiff In Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12274.

Criminal Court of Appeals of Oklahoma.

Oct. 24, 1956.

318

W. C. Henneberry, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Samuel Kinnard Oates, plaintiff in error, hereinafter referred to as defendant, was charged by information filed in the district court of Tulsa County with the crime of driving a motor vehicle while under the influence of intoxicating liquor, second and subsequent offense, was tried to a jury, convicted and his punishment fixed at confinement in the State Penitentiary for a term of two years, and to pay a fine of $500. Appeal has been properly perfected to this court.

We note that counsel other than trial counsel has filed appellate brief herein. Some nine specifications of error in petition in error are argued together, without separate headings or specifications, as required by Rule 7 of this court, 22 O.S.A. c. 18, Appendix. The Attorney General has combined the specifications of error for convenience into three divisions. We shall treat the issues by an attempt to put first things first.

The sufficiency of the information is attacked. The pertinent portion of the information reads:

"* * * that Samuel Kinnard Oates on the 25th day of November, A.D.1954, in Tulsa County, State of Oklahoma, and within the jurisdiction of this court, did unlawfully, wilfully, knowingly and feloniously drive and operate a certain motor vehicle, to-wit: A 1947 Chevrolet automobile, bearing 1954 Oklahoma license number 2–92154 in the 3800 Block [*on*] North Lewis [*street*] in [*Tulsa*], Tulsa County, Oklahoma, while under the influence of intoxicating liquor." (Italicized words supplied.)

It is at once noticeable that following the phrase "in the 3800 Block" the word *"on"* should have been added for clarity. And the word *"street"* following the words "North Lewis", should have been added for the same reason. Also the word *"Tulsa"* should have been added just preceding "Tulsa County, Oklahoma."

The question now arises as to whether the omission by the county attorney of the three words suggested and that we have italicized and added by brackets in the information quoted above, constituted omissions that made the information not only defective, but fatally defective.

▋ The record discloses that the sufficiency of the information was never attacked or questioned at any time in the trial court, or even in petition in error, but the attack appears for the first time in defendant's brief. It would have been a simple matter for the court to have permitted the county attorney to amend the information instanter, by inserting the three words suggested, by interlineation. Apparently neither defendant nor counsel had any doubt as to what the language of the information meant. In fact, on trial the defendant affirmed the route of travel alleged, and did not deny any allegation of the information except that he contended he was not drunk. Nevertheless, if the information failed to charge a crime, that would mean that a fundamental right had been violated and the point could be raised for the first time on appeal. Gibbons v. Territory, 5 Okl.Cr. 212, 115 P. 129; Wingfield v. State, 81 Okl. Cr. 146, 160 P.2d 945.

██ As a guide for testing the sufficiency of the information in question, we find in Phillips v. State, 267 P.2d 167, 168, where this court said:

"Where the information has not been challenged by demurrer or motion to quash, the defendant pleads to the information and goes to trial, any objection to the sufficiency of the information should be overruled if by any intendment, inference or presumption, it can be sustained.

"An information or indictment which, construed under the ordinary rules of construction, states all the essential elements of the crime charged sufficiently to enable a person of common understanding to know what is meant, and with sufficient particularity to enable a defendant to prepare for his trial, and to plead the judgment in bar, if again informed against for the same offense, is sufficient.

See also Monahan v. State, 95 Okl.Cr. 234, 243 P.2d 744, and Slater v. State, Okl. Cr., 296 P.2d 193. And see Argo v. State, 88 Okl.Cr. 107, 200 P.2d 449, 450, where we said in paragraph two of the syllabus:

"An information that informs an accused of the offense with which he is charged with such particularity as to enable him to prepare for his trial, and so defines and identifies the offense that, if convicted or acquitted, he will

be able to defend himself against any subsequent prosecution for the same offense, is sufficient."

From this it would appear that an information concededly defective and where the trial court might properly have sustained a demurrer or required amendment, if the question in some manner had been raised during the course of a trial, would, where not raised be by the appellate court upheld if violence is not done to recognized rules of construction.

Again, can the information, then, that we have quoted be upheld?

The statutory provision involved is 47 O.S.A.1951 § 93, and reads in part:

"It shall be unlawful for any person who is under the influence of intoxicating liquor * * * to operate or drive a motor vehicle on any thoroughfare, highway, county road, state highway or state road, public street, avenue, public park, driveway, public square or place, bridge, viaduct, trestle or any thoroughfare or structure, public or private, designated, intended or used by or for the general public for travel or traffic or the passage of vehicles within this State and any person violating the provisions of this Section, shall be deemed guilty of a misdemeanor for the first offense and upon conviction therefor shall be punished by imprisonment in the County Jail for a period of time not less than ten (10) days or more than one (1) year, or a fine of not more than Five Hundred Dollars ($500.00) or by both such fine and imprisonment * * *."

What would be a reasonable interpretation of the meaning of the language of the charge that defendant did drive a described automobile "in the 3800 Block, North Lewis, in Tulsa County, Oklahoma while under the influence of intoxicating liquor"? What was meant?

Present counsel for the defendant asserts, in effect, that the term "in the 3800 Block North Lewis" fails to describe a specific point on a public highway where the car

was driven; that the car might have been driven at any number of points not a place of travel at all. It is said that any doubt as to the issue as to the sufficiency of the information has been settled by the case of Jones v. State, 94 Okl.Cr. 15, 229 P.2d 613, 614.

In the Jones case the defendant was charged with driving a described motor vehicle while under the influence of intoxicating liquor: " 'From a point 135 feet South of the intersection of Choctaw and Broadway Streets in the City of Marlow, Oklahoma, at which point he was involved in a property damage accident [case]' ".

This court through Jones, J., in the body of the opinion stated:

"The word highway is not mentioned anywhere in the information and there are no facts alleged by which this court could reasonably infer that the defendant was driving the automobile on a highway. Even in the caption the crime is designated 'driving an automobile while under the influence of intoxicating liquor'. * * * The information does not allege that such a point is on a street of the City of Marlow and does not allege any point to which the automobile was driven. As pointed out by counsel for the defendant, there was nothing in the information to show that the spot where the car was allegedly driven was not on private property or even in the private driveway of some residence not used by the general public."

The writer concurred in that opinion. Probably what was meant in that case was that the car was driven to the intersection of Choctaw and Broadway Streets in the city of Marlow, Oklahoma, from a point 135 feet south thereof and at said intersection defendant was involved in a property damage accident. But the grammatical construction did not justify such an assumption. Such conclusion would have been too speculative from the language in question. The reasonable interpretation was that the accident happened at a point from a point

135 feet south of the intersection of Choctaw and Broadway Streets in the city of Marlow. The point might have been one foot from there, or fifty or more feet and out in a field. In that case the defendant interposed a demurrer, but to no avail.

In the within case the phrase "in the 3800 Block North Lewis" restricts the point where the car was driven to some point in the "3800 block", which could only mean at a point along North Lewis between the number 3800 and 3899, what specific point would be immaterial.[1] The even numbers would be on one side of the street, and the odd numbers on the other. Two blocks would be involved. North Lewis, obviously a street, would separate the two blocks falling within these numbers. By no stretch of the imagination could the vehicle be reasonably placed out of the street onto a private lot or drive. And this street was alleged to be in Tulsa County. There is but one city in Tulsa County with a thoroughfare running as high as "3800", and in connection with the allegation "Tulsa County, Oklahoma", Tulsa obviously was the city "3800 Block North Lewis" fitted into. In all events, it was a readily ascertainable thoroughfare in Tulsa County.

We think under the circumstances recited that the information could have been made more certain, but that it was sufficient to inform the accused of the offense with which he was charged, with such particularity as to have enabled him to prepare for his trial, and so defined and identified the offense that, if convicted or acquitted he would be able to defend himself against any subsequent prosecution for the same offense. Argo v. State, supra; Phillips v. State, supra; Raper v. State, 96 Okl.Cr. 18, 248 P.2d 267.

The case of Chandler v. State, 96 Okl.Cr. 344, 255 P.2d 299, is urged in bar of our conclusions, but the facts there and here are so different that we believe a reading of that opinion and the writer's concurring opinion will readily demonstrate the distinction. There was no evidence taken down because the defendant in that case had plead guilty to driving while intoxicated. If the short cut to Guthrie was a private road on a ranch, no law could have been violated. But the accused might not have known that. We could not tell from the record whether defendant was misled or not. Therefore, I concurred in granting a new trial.

Boiling down counsel's argument concerning the sufficiency of the information in this case, he, in effect, says: The information is defective. But it was not so defective as to mislead defendant, but it could have misled him. Therefore, he is entitled to have his case reversed.

The proposition advanced seems too hypertechnical for further discussion.

It has been noted that the defendant was charged with driving (on November 25, 1954) while under the influence of intoxicating liquor, *second and subsequent offense.* This, as provided by 47 O.S.A. § 93 (Supp. 1953, which was in effect on November 25, 1954) is as follows:

"* * * Any persons found guilty of a subsequent offense under the provisions of this Act shall be deemed guilty of a felony and upon conviction therefor shall be punished by imprisonment in the State Penitentiary for a period of time not to exceed five (5) years, or a fine of not more than One Thousand ($1000.00) Dollars or both such fine and imprisonment, and shall have his driver's license revoked for a period of twelve (12) months by the Commissioner of Public Safety of the State of Oklahoma."

During the trial, the then counsel for the defendant stipulated and agreed with the State that the records of Tulsa County would reflect that the defendant was on August 30, 1946 convicted in case No. 12630 of driving while drunk, and that if the arresting officer in that case were present he would testify that the defendant in that

1. Louis v. State, 96 Okl.Cr. 269, 252 P.2d 938; Hanlan v. State, 96 Okl.Cr. 331, 254 P.2d 373; Raper v. State, 96 Okl.Cr. 18, 248 P.2d 267.

case and in the one then being tried was one and the same person.

- The defendant testified and on cross-examination admitted the conviction of driving while drunk set out in the stipulation. Counsel for the State then asked defendant: "Now let me ask you this, have you ever been convicted of any other offenses that are a violation of. the laws of the State of Oklahoma?" He answered, "No, sir."

Counsel for the State then, apparently taking the view that witness might be confused, asked him: "Let me ask you this, were you convicted or did you plead guilty to any other offenses that are a violation of the laws of the State of Oklahoma?" He answered: "Well, that drunk driving charge is the only one I ever remember of." Following this, counsel for the State obtained from the defendant admissions that he had also entered pleas of guilty to the following: (1) May 1, 1945, in the municipal criminal court of Tulsa county, to a charge of driving while drunk; (2) February, 1951, in the district court of Rogers county, Oklahoma, to the charge of driving while under the influence of intoxicating liquor; (3) July 28, 1952, in the court of common pleas of Tulsa county to charge of public drunkenness; and (4) February 13, 1954, in court of common pleas of Tulsa county to charge of public drunkenness.

■ Clearly the counsel for the State was justified, and it was his duty to cross-examine the defendant as he did, when the defendant, after admitting his previous conviction for driving a motor vehicle while under the influence of intoxicating liquor, to ask him about convictions at other times, where counsel for the State possessed information to such effect, as previous convictions for crime would have a bearing on the weight the jury might give to his testimony, and particularly would this be true, as here, where witness denied prior convictions or entering pleas of guilty to previous charges. Storer v. State, 84 Okl.Cr. 176, 180 P.2d 202; James v. State, 64 Okl.Cr. 174, 78 P.2d 708.

Complaint is made as to the instructions of the court in this regard. Instruction No. 4 merely sets out the stipulation as to the August 30, 1946 conviction for driving while under the influence of intoxicating liquor; and then Instruction No. 5 simply explained that evidence of other previous convictions of the defendant was admitted, not as tending to prove the guilt or innocence of the defendant of the crime charged, but that the jury might in its discretion "consider the same, as such facts may or may not in your judgment affect the weight. and credit you will give to the testimony of the defendant, but for no other purpose. A person may not be convicted of the commission of one offense by any proof tending to show that he may or may not have committed another offense."

■ We note that there was no objection or exception to the two instructions now in brief complained of, or any of the other instructions given, and that there was no request whatever for any additional or further instructions. The question was not raised in the motion for new trial, or the petition in error filed herein. By reason of such facts, we deem applicable the rule we have so often announced, that alleged error in the giving of an instruction will not be considered on an appeal in the absence of an exception saved to the giving of such instruction, unless it is so basically erroneous as to mislead and confuse the jury as to the issues of the case. See Cherry v. State, Okl.Cr., 276 P.2d 280; Whisenhunt v. State, Okl.Cr., 279 P.2d 366; Gentry v. State, 86 Okl.Cr. 92, 189 P.2d 626. Also in the recent case of Sealy v. State, Okl.Cr., 288 P.2d 422, we said:

"Where instructions, while not technically correct, were not objected to by defendant and were not so fundamentally wrong that reviewing court could say that they deprive defendant of a substantial right essential to his defense, conviction would not be reversed."

It is argued that the verdict is not sustained by sufficient evidence. We have read the evidence carefully, and do note that the officer failed to give the defendant any of the recognized tests used in determining whether a person may be intoxicated.

State Highway Patrolman Mayberry testified that he and officer Lee were parked on the shoulder of North Lewis near 36th Street, when they noticed defendant's car approaching from the south and he noticed defendant run his car off onto the shoulder of the road and then he ran his car across the highway onto the west side of the road, and partly on the shoulder. The officers stopped the car and found the defendant under the wheel, and also in the car were defendant's two young boys and one Jess Buffington. The officers arrested both the defendant and Buffington for drunkenness, and the defendant for driving while drunk, and took them to the jail. Witness said that defendant had the odor of alcohol about his person, and that when he walked he staggered, and in his opinion defendant was intoxicated. Witness said they found an empty whiskey bottle in the back seat of the car. Witness on cross-examination said that defendant refused to submit to an intoxication test and officer Lee testified substantially as officer Mayberry, but in addition said:

"A. When I first saw him he was on the—partially on the east shoulder behind our car then his car came back onto the road and completely onto the left side of the road as it passed us. At this time it was progressing up the hill, near the crest of the hill and another vehicle came over the hill headed the opposite direction and he stopped his vehicle in the left lane of traffic and the other car turned to the left and went completely across the road onto the east shoulder."

Defendant testified and denied that he was intoxicated. He denied having taken a drink of whiskey, but said that he had been to a turkey shoot, trying out a gun he had. He took his two young twin boys, aged 12 years, and he left home some time after 3 P.M., when he and his family had finished their Thanksgiving dinner. He ran into an old friend, Jess Buffington, at the shoot. He stayed at the shooting match from 4 until it got too dark to shoot. He then helped Buffington feed some cattle that were close by, and thereafter got some barbeque and a bottle of beer for each of them.

Witness was asked to tell the court and jury what happened just prior to and at the time of his arrest. He testified:

"A. Well, whenever I made the turn on North Lewis there was a car coming which—when I just got in my turn and straightened there was another car coming over the crest of the hill—there is a hill right there north of there, I would say about 300 feet from where I was at at that time and he had bright lights and—

"Q. Describe those lights, please, sir. A. Well, they was extraordinary bright, you know, blinding lights and I just pulled over—

"Q. Did that affect your driving in any way? A. Yes, ma'am, it did.

"Q. Explain just how it did. A. At first I pulled over to my right and I knew there was a little bridge right in there and I was afraid I was going to hit it and this fellow yelled at me like he was going to turn in there, it just looked to me like he was about half way in the middle of the pavement so he was coming right at me so the only thing I knew to do, I just swerved out and come almost to a stop whenever I did.

"Q. Which direction was this car coming? A. He was going south.

"Q. And what part of the road was he using? A. He was using my side of the road.

"Q. And what did you do? A. Well, about that time the police officer sounded his siren and I got my car

straightened out and parked just about 30 or 40 feet right back of there— right by the sales barn on the right-hand side of the shoulder of the road."

Jess Buffington testified substantially as defendant, except he said he put an empty half pint whiskey bottle in the back seat of defendant's car. He said that he had attended the turkey shoot all day and had drunk the half pint of whiskey prior to the appearance of the defendant at the turkey shoot. He said that the bottle was in his bosom and he did not want to throw it on the ground, so he put it in defendant's car. Witness testified that when the officers arrested defendant, he had pulled his car back on the right-hand side of the road.

In rebuttal officer Lee testified that defendant's car was pursued by them a short distance and that when they stopped defendant his car was on the left-hand side of the road.

From the above it is seen that there was a sharp conflict in the evidence. There was a close question as to whether defendant was actually intoxicated. But we have often said a jury's determination upon a conflict in the evidence must be controlling on an appellate court, and unless there are errors of law appearing in the record, a jury's finding of guilty will be sustained on appeal where there is competent evidence to sustain such finding. Campbell v. State, Okl.Cr., 280 P.2d 758; Williams v. State, 97 Okl.Cr. 229, 263 P.2d 527; Beavers v. State, Okl.Cr., 282 P.2d 783.

On pronouncing judgment the trial court recounted the fact that the defendant had a wife and six children to support, and that he had no way to pay a fine, and stated that if the court had the power he would remit the fine, and would give consideration to modifying the two year sentence.[2]

In view of the fact that the trial judge, who heard the evidence, observed the witnesses, was apparently impressed with the weakness of the State's proof as to intoxication and under all the circumstances thought the sentence he was compelled to impose by reason of the verdict of the jury should be modified, and the further fact that no collision or accident was involved, the judgment appealed from is modified by eliminating the fine imposed, and reducing the penitentiary sentence from two years to one year; and as so modified, the judgment is affirmed.

BRETT, Judge (concurring).

I especially concur on the basis of the rule set forth in Argo v. State, 88 Okl.Cr. 107, 200 P.2d 449, as quoted in the majority opinion. The record reflects the information was sufficient to enable the defendant to prepare for trial, for at no time did he complain that the information was so indefinite as to hamper him in preparation for trial. Moreover, it is apparent from the record that the defendant was not misled as to the identity of the offense, and under the record herewith presented he is adequately protected against any subsequent prosecution for the same crime.

We can readily perceive quite a different situation where the plea was of guilty, as in the case of Chandler v. State, 96 Okl. Cr. 344, 255 P.2d 299, where the matter of his being misled was open to speculation, but where, as herein, the entire record discloses the defendant was not misled, as disclosed by reasonable intendments, inferences and presumptions, which he himself indulged in favor of the information, the information should be sustained, and sheer technical objection thereto should not prevail.

JONES, Presiding Judge (dissenting).

I cannot concur in sustaining the conviction of an accused where the information wholly fails to charge a crime within the jurisdiction of the trial court and where

2. See 47 O.S.Supp.1955, § 93, now in effect, which changes the penalty provisions, and provides for both a fine "and" imprisonment, rather than a fine "or" imprisonment, one or both.

two misleading instructions are given to the jury, even though inept counsel appearing with the accused at the trial did not question the sufficiency of the information nor save an exception to the instructions which were given. The defendant is being forced to serve one year in the penitentiary upon conviction on an information which all three members of this court and the Attorney General admit is defective because he was defended in the trial court by an inexperienced lady who made no proper record to afford a basis for an appeal.

This court has consistently held that where an information is fundamentally defective so that it states no crime, such question may be presented for the first time on appeal. Ex parte Brown, 77 Okl. Cr. 96, 139 P.2d 196; Brannon v. State, 94 Okl.Cr. 261, 234 P.2d 934; Cornett v. State, 96 Okl.Cr. 125, 250 P.2d 55. In the instant case the majority concede that the information is defective and if a demurrer had been filed and overruled, the case would have been reversed. This appeal should be governed by the similar case of Chandler v. State, 96 Okl.Cr. 344, 255 P.2d 299, wherein this court established the following rules of law as shown by the syllabus:

"1. Where an information is so fundamentally defective that it wholly fails to state facts constituting a crime within the jurisdiction of the trial court, the question of its sufficiency may be raised for the first time on appeal.

"2. The gist of the sufficiency of an information is not whether it might possibly have been made more certain, but whether it alleges every element of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet.

"3. In a prosecution for driving a motor vehicle on a highway while under the influence of intoxicating liquor, 47 O.S.1951 § 93, the essential elements of the crime which must be alleged in the information are: (1) the driving of a motor vehicle, (2) while under the influence of intoxicating liquor, and (3) on a highway as defined by statute. Where any one of these three essential elements are omitted from the information, it is fatally defective.

"4. Information which merely alleged defendant drove an automobile while under the influence of intoxicating liquor and omitted an allegation that it was driven on a highway or street in the State of Oklahoma was insufficient to charge a crime under the statute prohibiting the driving of a motor vehicle on a public highway while under the influence of intoxicating liquor. 47 O.S.1951 § 93."

In the Chandler case no demurrer or attack on the information was made in the trial court but the question of its sufficiency was raised for the first time on the appeal. In fact, the defendant Chandler entered a plea of guilty and then appealed. The information in the Chandler case alleged that the defendant did drive a Ford coupe " 'at and upon Guthrie Short Cut, from an unknown point to a point ½ mile north of N.E. 23rd Street, adjacent to Oklahoma City, * * *.' " The writer of the majority opinion in the instant case stated as follows in the Chandler case:

"An allegation that one drove at and upon a short cut to or from Guthrie 'from an unknown point to a point ½ mile north of N.E. 23rd Street, adjacent to Oklahoma City', obviously might mean any number of routes over private property not open to the public. Likewise, the allegation in the information that the defendant drove in and upon 'Guthrie Short Cut', while limiting the travel to a particular short cut, even so it could have been through private property not open to public travel at the point in question. And while such possibility is perhaps slight, there is too much speculation to meet the requirements of the statute. The real difficulty is that 'short cut' is not syn-

onymous with 'turnpike', or 'highway' or 'public road'. 'Guthrie Short Cut' is not a name ascribed to a part of the public highways of this State by the State Highway Department and so officially marked · by signs along the·. route or by its official maps, so far as anything in the record discloses, or of which this court might take judicial notice."

In the instant case there is no statement in the information by which this court can infer that the defendant drove his automobile on a highway or street as defined by the statute. 47 O.S.1951 § 93. Not even in the caption to the information where the offense is named does the author of the information use the word "highway" or "street" but merely describes the crime as "driving while intoxicated." The third essential element of the crime of driving a motor vehicle on a highway while under the influence of intoxicating liquor as shown in syllabus three of the Chandler case, supra, is missing from the information.

In Mayes v. State, 80 Okl.Cr. 52, 156 P.2d 822, this court held that it was not a violation of the law for an accused to drive his automobile while intoxicated in a hay meadow off the public road.

Here the information recites that defendant drove a Chevrolet automobile "in the 3800 block, North Lewis in Tulsa County, Oklahoma." We cannot take judicial notice that North Lewis is a street in the City of Tulsa. A city block encompasses an area of land generally square or rectangular in shape. The word "block" does not denote street or highway. In fact, where the preposition "in" is used referring to a city block, this indicates to my mind that the driving could be on a private driveway in the block and not along a street adjacent to a block. If the· driving of an automobile was done on private property not a street as defined by statute, no offense would have been committed even though the driver was intoxicated.

Judge Brett in his specially concurring opinion stated that he was concurring on the basis of the rule set forth in Argo v. State, 88 Okl.Cr. 107, 200 P.2d 449, 450. A reading of that case discloses that the caption to the information correctly defined the offense and in the body of the information it was alleged that defendant did " 'while under the influence of intoxicating liquor, drive, operate ·and propel an automobile on the public streets of Coalgate, Oklahoma, to-wit: from a point to your informant unknown, to another point in Coal County, State of Oklahoma, to-wit: a point on Main Street in the City of Coalgate, due east of the Palace Drug making a U-turn, * * *' " I can't see how the Argo case can be any consolation to the majority because there it is stated in unmistakable language that the driving was on a street in Coalgate and the point at which the driving occurred is sufficiently stated. In the instant case, however, at no place in the information is the word "street" or "highway" used, either in the caption or in the body of the information; no city is named; everything is left to conjecture. The majority agree that if the accused had entered a plea of guilty to the information as drawn and had appealed as was done in the Chandler case, he would have had a better chance for a reversal. If an information is fundamentally defective, we should not sustain a judgment of conviction whether the appeal is taken after a trial or after a plea of guilty. The information here was far less sufficient than that which we held fundamentally defective in Jones v. State, 94 Okl.Cr. 15, 229 P.2d 613.

The proof of intoxication of the accused as pointed out by the majority was weak. The trial court recognized that fact and as stated in the majority opinion said that he would modify the verdict of the jury if he had the power. I feel that the prior record of the accused has been the determining factor in swaying the majority of the court to the conclusion that although the information was defective it should not be held insufficient to support the judg-

ment. In adopting the opinion the majority have changed the established rule that a fundamentally defective information may be questioned at any time so as to provide that a fundamentally defective information may be questioned for the first time on appeal *unless the accused has a prior criminal record.*

I cannot be consistent with expressions I have made in other cases herein cited if I do not dissent to the majority opinion. The information as drawn is wholly insufficient to comply with the fundamental requirements of pleading.